BRADY, C. J., and SMITH, SIMEONE and WEIER, JJ., concur.

In the Interest of BABY GIRL A_____, a Child.

A_____ L_____ A_____, a Minor and Natural Mother of the Minor Child, by her Guardian Ad Litem, Harold E. Scheppner, Jr., Appellant,

v.

Ralph L. SMITH, Juvenile Officer, St. Louis County, Respondent.

No. 34317.

Missouri Court of Appeals, St. Louis District.

May 23, 1972.

Harold E. Scheppner, Jr., David A. Lander, Legal Aid Society, Clayton, for appellant.

Miriam Bricker, Legal Advisor, St. Louis County, Corinne R. Goodman, Juvenile Court, Clayton, for respondent.

DOERNER, Commissioner.

A———— L———— A————, a minor and the natural mother of Baby Girl A————, by her guardian ad litem, appeals from a judgment and decree terminating her parental rights to her child, rendered in a proceeding brought under § 211.-441, RSMo 1969, V.A.M.S.

In the petition filed by the juvenile officer on December 29, 1970, it was alleged that since on or about December 15, 1969, the mother had "* * * abandoned the child * * *" and had "* * * wilfully, substantially and continuously or repeatedly neglected the child and refused to give the child necessary care and protection." Those allegations incorporate two of the various grounds upon which, if substantiated, the court is authorized to terminate parental rights. The primary question presented, as stated in the brief of the respondent, is: "The primary question raised in this case is one which has not yet been decided by a Missouri Court of Appeals: Can termination of parental rights be effected between a normal, adoptable child and a mentally deficient parent (who has never been declared 'legally incompetent,' but who has limited intelligence) when no realistic possibility exists that the child can ever be restored to the custody of that parent?" Thus the respondent concedes that the mother was "mentally deficient" and possessed only "limited intelligence." And while it is true that she has never been adjudicated, the evidence leaves no doubt as to the serious extent of her mental deficiency.

The record before us reveals that the mother at one time had gone to a "Special School," but that because of her behavior towards other children and her promiscuity in her sexual relations she had been made a ward of the juvenile court. The court awarded custody of her to the Department of Mental Health, which placed her in the State School and Hospital in St. Louis County, where she remained at the time of the hearing. When placed in the Hospital she was two months pregnant and was suf-fering from gonorrhea. She was placed in a maternity home for her confinement, and after the birth of the child, the child was made a ward of the court and placed in a foster home.

Dr. Vrithrviraj Phakur, a psychiatrist with the State School and Hospital, who had the mother under his professional supervision, testified that the mother was mentally retarded, functioned at a fourth grade level, although then 18 years of age, and could only count up to ten. He stated that the mother "* * * is unrealistic in her judgment about how to take care of her child and is not capable of making decisions concerning herself or her child. During Social Service consultations, she was unable to relate how she would be able to take care of her child and could not establish realistic goals for the future. Recommendation: She is in need of continued supervision and treatment in this institution and, from our observation, it appears that she is incompetent as far as taking responsibility of her child." Asked whether, in his professional opinion, the mother could "wilfully" or "knowingly" neglect her child between the pertinent dates he answered that she could not wilfully or knowingly do so, that "* * * she doesn't have the capacity."

Dr. Phakur placed the mother's I.Q. of 37 (WISC), which is approximately in the middle of the so-called moderate range of 50 to 20. We note, in passing, the reference in State of Missouri v. Brizendine, Mo., 391 S.W.2d 898, 902, that an I.Q. of 74 (WAIS) means that the individual was functioning "within the borderline of intellectuality."

Graphically illuminating the extent of the mother's lack of mental capacity is the following excerpt from the record:

"THE COURT: (addressing the guardian ad litem) I assume that your client is not in any condition to testify?

"MR. SCHEPPNER: I don't think so. (inaudible)

"THE COURT: I just want the record to show that if she wants to testify,—

"MR. SCHEPPNER: Well, let me ask her a few questions, Your Honor, on the record, if I may.

"THE COURT: Yes. .

"MR. SCHEPPNER: Anna, do you know what it means to swear to tell the truth? Do you? Speak up, Anna.

"A VOICE: Speak up loud, Anna.

"ANNA LEE ARCH: Yes.

"MR. SCHEPPNER: Do you know what it means, what happens to someone that doesn't tell the truth, Anna?

"A VOICE: Anna?

"MR. SCHEPPNER: Your honor, I don't believe my client is capable of giving testimony at this time."

The court's comment clearly indicated that in his opinion the mother lacked the mental capacity to testify, which was obviously confirmed when her guardian ad litem attempted to interrogate her. The court's conclusion as to the extent of the mother's mental deficiency was likewise indicated by his remark, at the conclusion of the hearing, that "I will take the matter as submitted. I may have both a factual and a legal question," an obvious reference to the legal question presented by the mother's mental deficiency. However, in the order terminating the mother's parental rights to her child the court failed to make any reference to what had been the primary issue before the court.

In its order the court did find that the mother had abandoned her child, and had wilfully and continuously neglected her, for the period stated, during all of which time the mother was a patient in the State Hospital. While the word "abandoned" is not defined in § 211.021, to "abandon" is "defined generally as 'to relinquish or give up with the intent of never again resuming or claiming one's rights or interests in; to give up absolutely; to desert, as a person

to whom one owes a duty, allegiance, or the like.' Webster's New International Dictionary (2nd Ed.), p. 2," State of Missouri v. Pogue, Mo.App., 282 S.W.2d 582, 587. And to "wilfully" do an act connotes the doing of it knowingly and intentionally. State of Missouri v. Brown, Mo., 445 S.W. 2d 647, 651. Thus both of the grounds upon which the order of termination was sought, and made, in the instant case require as a prerequisite the elements of knowledge and intent; and they, in turn, presuppose a mental capacity sufficient to form such an intent and to knowingly transgress that which is prohibited. We think it is clear from the record that because of the extent of her mental deficiency the mother lacked sufficient mental capacity either to form the intent to abandon her child or to wilfully neglect her. It logically follows that it does not appear "by clear, cogent and convincing evidence," as required by § 211.441, that the mother had abandoned her child, or had wilfully neglected her, for one year prior to the filing of the petition.

The respondent contends that unless the instant judgment terminating the mother's parental rights is affirmed " * * * the alternative life course for the child will be enforced continuance in foster care all through her formative childhood and adolescent years, never knowing how long she will remain in any one placement, and never being allowed to develop that degree of emotional security which logically results from being a permanent member of a loving family. The child will remain under the jurisdiction of the Juvenile Court and will be supported solely by public funds for a minimum of 14 more years." The fallacy in that argument lies in the assumption that the only procedure by which the child can be made available for adoption is by the termination of the mother's parental rights in the present proceedings. But if the mother is mentally incompetent to the extent indicated by the record before us, and is legally adjudicated as provided by §§ 475.075 and 475.080, then the mother's consent to the adoption would not be required,

§ 453.040, and the child could be legally adopted.

For the reasons stated the judgment is reversed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment reversed.

DOWD, P. J., and SMITH and SIMEONE, JJ., concur.