In re B. G. S., a Minor.

**Mary ELMORE, Juvenile Officer, Clay County, Plaintiff-Respondent,**

v.

**B. J. M., Defendant-Appellant.**

**No. WD32830.**

Missouri Court of Appeals,
Western District.

June 22, 1982.

Karen D. Ramsey, Kansas City, for defendant-appellant.

Max Von Erdmannsdorff, Kansas City, for respondent.

William J. Turpin, Liberty, guardian ad litem.

Before SHANGLER, P. J., and PRITCHARD and DIXON, JJ.

DIXON, Judge.

The natural mother appeals an order of the juvenile court making three children, B. G. S., J. L. S., and C. E. S., wards of the juvenile court and placing the children in foster care.

The mother questions the sufficiency of the evidence to support the trial court's

1. All statutory references are to RSMo 1978.

determination of neglect and the need for the care and protection of the court. This claim of error is bifurcated: first, that the evidence does not support the finding of neglect by the mother because acts of a third person endangering the children were proven; and second, that the presumption under § 211.011 [1] and the case law, that a natural parent is fit to retain custody, was not overcome. The issues presented require a detailed statement of the evidence presented to the juvenile court. Review is pursuant to *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

C. E. S. is a female child, age 11; J. L. S. is a male child, age 8; and B. G. S. is a female child, age 5. The father's whereabouts are unknown. In 1978, on the mother's request, the children were made wards of the court in Virginia and placed in foster care. The Virginia court has terminated its jurisdiction. The children came to Kansas City in 1980 to live with the natural mother.

School officials discovered bruises on J. L. S. and B. G. S. beginning in early April 1981. The school nurse noticed a number of bruises on B. G. S.'s leg, a large bruise on the inside of her thigh, numerous bruises on her arms and hands, and a bruise on her buttocks close to the spine. The blow to her thigh had raised blood blisters and appeared to have been made by a belt. An examination of J. L. S. revealed bruises across his shoulder, back, and buttocks, and also evidenced the use of a strap.

After interviewing the children, a social worker arranged for all three to be taken into protective custody on April 8. The children indicated that their injuries were the result of whippings administered with a leather belt by Jones, the mother's boyfriend, as punishment for picking flowers. According to the children, their mother was aware of prior similar spankings by Jones, and she had asked him not to spank them with a belt.

At the time of the relevant events, the mother and Jones shared a house in Clay County. The mother worked at two jobs,

and spent weeknights with a friend in a downtown hotel. Jones, unemployed at the time, was left with responsibility for the care and supervision of the children during the week.

Jones admitted inflicting the bruises found on the two children and described in detail whipping them with a belt. Jones telephoned the mother and announced to her his intention to punish; she acquiesced in the decision. Jones told J. L. S. and B. G. S. to remove their pants and lie across a bed, after which he administered the spankings with a leather belt partially wrapped around his hand. He estimated that he spanked J. L. S. ten or twelve times and B. G. S. six or eight times. Jones claimed that one of the blows accidentally struck B. G. S. on her thigh because of her squirming. Jones admitted that the spankings were severe and readily admitted that he had spanked them before with the mother's knowledge. Jones' sister also spanked the children hard enough to leave bruises.

Jones admitted he had been in the county jail as the result of a charge of child abuse. In addition to numerous misdemeanor charges and convictions, he was convicted on two charges of molestation. The mother had on one or two occasions told him not to use a belt when spanking the children. She said she gave him permission for the spanking.

J. L. S. and B. G. S. are afraid of Jones. The court ordered that the children be made wards of the court until 17 years of age and placed them in the custody of the juvenile officer for foster home care.

The mother's first claim is that under the pleadings there was no proof that she had neglected the children. The pleadings followed verbatim the language of § 211.031.-1(1)(a) which proscribes parental neglect or neglect by a person having custody by court order. The petition, however, also factually describes the conduct of Jones and the mother. Section 211.031.1(1)(b) proscribes neglect by other persons having custody without court order, which the mother asserts was not pleaded. There are two answers to this contention.

∎ The pleadings are accurately characterized by the mother; but the case was tried, and the evidence presented on the theory that the children had been neglected by the persons having custody by parental placement. A proceeding in the juvenile court is in the nature of a proceeding in equity. § 211.171(6). In a civil case, when the parties have fully explored the issues and the evidence, the pleadings will be considered amended to conform to the proof. In any event, the factual basis of the claim of neglect was pleaded.

∎ Second, in testing the sufficiency of the evidence to support the allegations, the evidence and all the reasonable inferences which may be drawn are considered in the light most favorable to the court's order. *L. v. Jackson County Juvenile Court*, 544 S.W.2d 330, 332 (Mo.App.1976). The record shows the mother was aware of the previous spankings by Jones and the children's fear of Jones. The mother, despite her knowledge of those facts, took no steps to protect the children, but continued to live apart from the children, leaving them under the total control of Jones. The inference from these facts and the number of bruises discovered by the school officials over a period of several days raises a permissible inference that the mother had neglected her duties in caring for the children.

∎ The second prong of the mother's complaint with respect to sufficiency is based upon the presumption that the natural parent is fit to retain custody. The cases cited by the parties, *In Re D. L. W.*, 530 S.W.2d 388 (Mo.App.1975), and *In Re J. L. L.*, 402 S.W.2d 629 (Mo.App.1966), recognize that the overriding and primary concern of the courts when dealing with child custody is the welfare of the child. The Supreme Court has recently summarized the guiding principle in language which refutes the mother's position:

> The general rule that natural parents have a primary right to the custody of their children is controlling when it is consistent with the welfare of those children. This is so because the rule favoring natural parents stems from the presumption that maintaining the natural parent-child relationship is best for the

child. When in conflict, however, the rule favoring parental custody is superceded by the concerns of the state for the child's welfare.

*In Interest of C. L. M.*, 625 S.W.2d 613, 617 (Mo. banc 1981). The mother also asserts that her statements of commitment to properly care for the children were not properly considered by the trial court. The consideration of the mother's assertions of willingness to establish a new residence and devote more time to the children were matters well within the province of the trial court on the issue of credibility and weight and will not be disturbed absent a showing that the trial court was clearly wrong. *Murphy v. Carron, supra.* The mother likewise complains in the argument portion of her brief that the court denied her motion to transfer the case to the juvenile court of Jackson County. Section 211.041 makes the jurisdiction under 211.031 continuing jurisdiction, and at most, the motion was addressed to the discretion of the trial court, and nothing appears to demonstrate an abuse of that discretion.

Judgment affirmed.

All concur.