IN the INTEREST OF B.C.H., a Minor.

T.D.C., Juvenile Officer, Respondent,

v.

W.S.H., et al., Appellants.

No. WD 37772.

Missouri Court of Appeals,
Western District.

Oct. 14, 1986.

John P. Poland, Kansas City, for appellants.

Debra J. Wilson, Kansas City, for respondent.

Carolyn P. Bayer, Legal Aid, Kansas City, guardian ad litem.

Before LOWENSTEIN, P.J., and MANFORD and GAITAN, JJ.

GAITAN, Judge.

This is a direct appeal from a judgment of termination of parental rights, pursuant to § 211.447, RSMo Supp.1984. Appellant, W.S.H. charges the juvenile court erred in ordering termination of her parental rights because (1) there was insufficient evidence of willful abandonment; and (2) that there was no evidence that she was mentally capable of forming an intent to abandon B.C.H. The judgment of the juvenile court is affirmed.

The minor, B.C.H., is a male born on November 15, 1976. On January 21, 1984, under court order, he was removed from his mother's custody. Under the jurisdiction of the juvenile court, B.C.H. was placed in the custody of the Division of Family Services (D.F.S.) for educational neglect.

A petition for termination of parental rights was filed on March 26, 1985. Termination was sought on the grounds of abandonment, neglect, W.S.H.'s mental condition, and the failure to rectify conditions. On October 17, 1985, a hearing was conducted.

Three D.F.S. employees testified at the hearing. They stated that numerous attempts had been made to communicate with the mother, both in person and by mail. Attempts were made to advise the mother of various court dates, her right to visit B.C.H., and the need to develop a plan whereby she would seek the custody of B.C.H.

The evidence revealed that the mother was living in a local motel. On one occasion, a D.F.S. employee went to the motel, heard the sound of the television inside, and knocked on the door. The mother responded, "Who's there", and when the employee identified herself, there was no further response. Registered mail was sent to the mother for which she refused to execute receipts. On one occasion, an employee of D.F.S. met with the mother at her sister's home. The employee advised the mother of the need to formulate a plan to regain custody. He also asked the mother if she wished to visit with B.C.H. The mother replied that she never wanted to see B.C.H. again. The employee then informed the mother of the consequences, that her parental rights could be terminated, and the mother responded, "Go ahead and do it." Again W.S.H. was advised that if the termination was ordered she would not have the right to see B.C.H. again, she again told that employee that she never wanted to see B.C.H. again and that the termination should proceed. No contact had occurred between B.C.H. and his mother between January 21, 1984 and the hearing date. The mother had not provided or made any offer to provide any financial assistance for B.C.H. during this period.

Subsequent to the termination hearing, which neither parent attended,[1] the juvenile

1. The natural father, though identified, was nev- er located and service was had upon him by

court found that B.C.H. had been abandoned by his parents for a period of six months or longer, without good cause, without any communication, visitation or any provision of support from either parent. No findings were made on the other alleged grounds for termination. This appeal follows.

■ The termination of parental rights is purely statutory and is governed directly by §§ 211.442–211.467, RSMo Supp.1984. The gravity of parental termination requires strict and literal compliance with the applicable statutes. *In the Interest of W.F.J.*, 648 S.W.2d 210, 214 (Mo.App.1983). A juvenile court may order parental termination if such termination is deemed to be in the best interest of the child and there is clear, cogent and convincing evidence that one or more of the conditions prescribed by § 211.447 is shown to exist. *See* § 211.-447.2, RSMo Supp.1984.

■ The party invoking the statute, the juvenile officer herein, bears the burden of proof. *W.F.J., supra.* It has been held that this burden is met when the evidence "instantly tilts the scales in the affirmative when weighted against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *In re Adoption of W.B.L.*, 681 S.W.2d 452, 454 (Mo. banc 1984), citing *In re O'Brien*, 600 S.W.2d 695, 697 (Mo. App.1980).

■ Review of a termination proceeding is upon the same standard as in all other civil court-tried cases. A judgment will be affirmed unless unsupported by the evidence, it is against the weight of the evidence or it erroneously declares or applies the law. *W.B.L., supra. Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The trial court is accorded deference regarding the resolution of fact issues and the credibility of witnesses. The presence of contrary evidence does not necessarily demonstrate that a judgment is against the weight of the evidence. *W.B.L., supra.*

Only when a reviewing court is of the firm belief that a judgment is wrong will it reverse. *Murphy v. Carron, supra. H.D. v. E.D.*, 629 S.W.2d 655, 657 (Mo.App.1982). When a reviewing court is asked to review the sufficiency of the evidence, the evidence and all reasonable inferences which may be drawn from that evidence are considered in a light most favorable to the juvenile court's judgment. *In re B.G.S.*, 636 S.W.2d 146, 148 (Mo.App.1982).

With the foregoing as a background, attention is directed to the case in chief. Termination herein was based upon findings of abandonment under and pursuant to § 211.447.2(1), (2)(a) a. and b. That statute reads as follows:

2. The juvenile court may, upon a petition filed by the juvenile offer under this section, terminate the rights of parent to a child if it finds that such termination is in the best interest of the child and one or more of the following conditions are found to exist:

(2) When it appears by clear, cogent and convincing evidence that one or more of the following conditions exist:

(a) The parent has abandoned the child. The court may find that the parent has abandoned the child if, *for a period of six months or longer for a child over one year old* or a period of sixty days or longer for a child under one year of age at the time of the filing of the petition, either of the following has occurred ...:

b. The parent has, without good cause, left the child without any provision for support and without any communication or visitation from the parent. Evidence that the parent has acted to support, to communicate with or to visit the child during the period may be disregarded if such acts of the parent appear to have been merely a token effort. ...

[Emphasis added.]

### I.

Appellant argues that evidence of abandonment is restricted to the six month peri-

---

publication. His parental rights were also terminated and no appeal from that ruling has

been presented.

od immediately preceding the filing of the petition to terminate parental rights. She further relies upon *In re Trapp,* 528 S.W.2d 489, 495 (Mo.App.1975). She asserts in her argument that the parent's conduct, in order to constitute willful abandonment, must have occurred during a six-month period immediately preceding the filing of the petition to terminate parental rights. She further asserts there was no such evidence in the case in chief.

*Trapp* was a decision predicated upon the 1969 parental rights statute, which was repealed in 1978. That statute (§ 211.441, RSMo 1969) provided for termination if there was clear, cogent, and convincing evidence of abandonment "for one year or more *immediately prior* to the filing of the petition," and said termination was in the best interest of the child. The successor statute, RSMo 1978, like the 1984 amended version applicable to the present case, omitted the above-quoted language.

Linda Shipley was the D.F.S. employee in charge of the case at the time of the termination hearing. She testified that she was familiar with the case from the time B.C.H. was removed from parental custody. As a consequence, she testified regarding the attempted communication with appellant. Her testimony was supported by other D.F.S. employees. The facts are that appellant had no communication nor sought visitation with her son for approximately twenty to twenty-one months. There was no contrary evidence. This evidence clearly supports the juvenile court's finding that there had been neither communication nor visitation.

Although it appears the legislature may have had something in mind in deleting this wording from the pre-*Trapp* statute, the mother's point is nevertheless doomed. The evidence here clearly discloses the following chronology: the child was taken from the mother's custody on January 21, 1984, and this was her *last* contact with the child—she did not even come to the hearing on October 17, 1985, from which she now appeals.

Calls and visits were made by D.F.S. employees with the mother in February and March of 1984 and with letters in March; they talked through a door to her in May 1984. In January 1985 she told a worker she never wanted to see the child again, and said, "Go ahead and terminate." In January 1985 she did not appear at a hearing, she had no contact with or support of the child through May 1985. Efforts through the date of the court hearing to make contact with the mother were fruitless.

The mother mistakenly claims that since there was no evidence of "any activity" by D.F.S. for six months prior to filing the petition, she must prevail. She misses the mark. She ignores § 211.447.2(a)b of the statute which requires her to support, communicate and visit. The evidence here, which comports with the finding of abandonment, shows the mother did absolutely nothing toward her parental duties with regard to this child from January 1984 to date. The evidence of her total abdication of support, communication, etc. is even more telling with the testimony of her positive assent to termination of January 1985.

Appellant extends her argument further by stating there was no showing of a willful abandonment because the same was contradicted by evidence that the child was taken from her custody involuntarily by court order. *W.F.J.,* 648 S.W.2d at 215, discloses that generally a finding of abandonment is not compatible with a finding that custody has ended involuntarily. However, the court in *W.F.J.* also noted that abandonment is characterized by a settled purpose to forego all parental duties and relinquish all parental claims. Thus, evidence to forego all parental duties and to relinquish all parental claims after separation, or after the custody has been severed involuntarily by a proper court order, is certainly admissible upon the issue of termination. This is true even though the initial breach or severance of the parent-child relationship was not occasioned by an act of desertion. *See W.F.J., supra.* Here, appellant neither sought visitation

nor attempted to communicate with her son for a period of twenty to twenty-one months. She resisted all efforts to arrange contact to such an extent that in all but one instance, she even refused to discuss the matter. This evidence, standing alone, is sufficient to demonstrate a settled purpose of abandonment and to support the termination of her parental rights.

Generally, the finding of a parent's intent to abandon is an inferred fact to be determined by the consideration of all the evidence relative to the parent's conduct. *W.B.L.,* 681 S.W.2d at 435. Here, appellant repeatedly and without equivocation stated that she never again wanted to see B.C.H. and urged the juvenile authorities to proceed with the termination of her parental rights. Such evidence leaves no doubt that appellant displayed the requisite intent or settled purpose to abandon B.C.H. Consequently, the respondent proved by clear, cogent and convincing evidence that W.S.H. abandoned B.C.H.

## II.

Finally, appellant argues a lack of evidence of her mental capacity to form an intent to abandon her child.

 It is unquestioned that it must be shown that a parent must have sufficient mental capacity to form the intent to abandon the child before termination can be ordered. *In re Baby Girl A,* 481 S.W.2d 602, 604 (Mo.App.1972). Appellant's reliance upon *Baby Girl A* for the proposition that evidence of mental deficiency precludes a termination of parental rights on the ground of abandonment unless the same is established by clear, cogent, and convincing evidence that the parent has the capacity to form an intent to abandon is misplaced. The court in *Baby Girl A* actually held that evidence of a mental deficiency which established that the parent lacked sufficient mental capacity to form the intent to abandon the child precluded termination on that ground. There is no evidence of a mental deficiency here. At best we have a comment(s) about the dress of B.C.H. (W.S.H. requiring him to wear win-

ter coats in the summer) and a non-expert conclusion drawn therefrom (D.F.S. employee's comment that that behavior is bizarre).

Appellant also cites *In Interest of M.N.M.,* 681 S.W.2d 457, 460 (Mo.App. 1984). There the court found that the mother did not have the requisite intent to abandon her child. However, in *In Interest of M.N.M.,* the mother had been adjudged to be incompetent by the Probate Division of the Circuit Court of Clay County and was undergoing treatment at St. Joseph State Hospital at the time of the termination of parental rights trial. *Id.* at 459. In both these cases there was clear, cogent and convincing evidence on the record that the parent did not have sufficient mental capacity to intentionally abandon her child. There is no evidence in the record to support appellant's conclusion that W.S.H. was in some way mentally deficient to the extent that she could not form the intent to abandon her child. The parent must have sufficient evidence to raise any defense. The mother here has not, by alluding to an instance of her putting a heavy coat on the child many months prior to termination, injected the defense of mental incapacity.

 Termination statutes are to be strictly construed and the burden of proof rests with the party seeking to invoke the statute throughout the proceedings. Nevertheless, the law favors the construction of statutes which is in harmony with reason and common sense and which tends to avoid unreasonable and absurd results. *In Interest of Ray,* 602 S.W.2d 955, 958 (Mo.App.1980). Therefore, it is ruled herein that the petitioning party is not required in the first instance to negate every possible excuse or reason for a parent's failure to support and to maintain contact with his or her child.

 In the case in chief, the evidence was totally insufficient to place the mother's ability to form an intent in issue. Neither the reference to her bizarre behavior nor the lay opinion that she suffered from

an unspecified mental or behavioral problem was sufficient.

For the reasons set forth, the judgment herein is in all respects affirmed.

LOWEINSTEIN, P.J., concurs.

MANFORD, J., concurs in concurring opinion.

MANFORD, Judge, concurring.

I take no exception to the finding by the majority opinion that termination of parental rights should occur in this case upon the ground of abandonment. This case illustrates one of the most obvious examples of abandonment that has surfaced in a long while. At first, I was puzzled why this appeal was lodged but now I am convinced that it resulted from a real sense of responsibility of appellant's counsel for which counsel should be commended.

Exception is taken to the manner in which disposition of this matter was made by the majority. While the majority does reference the facts developed during the hearing of this matter, I would offer the following account of the facts followed by what seems to me to be the proper analysis given the applicable statutes.

This is a direct appeal from a judgment of termination of parental rights, pursuant to § 211.447, RSMo Supp.1984. The judgment is affirmed.

The minor, B.C.H., is a male born on November 15, 1976. On January 21, 1984, under court order, he was removed from his mother's custody. It had been previously determined that B.C.H. was neither attending school nor receiving any equivalent instruction from any other source. Under the jurisdiction of the juvenile court, he was placed in the custody of the Division of Family Services (D.F.S.).

A petition for the termination of parental rights was filed on March 26, 1985. Termination was sought on the grounds of abandonment, neglect, the mother's mental condition, and the failure to rectify conditions. On October 17, 1985, a hearing was conducted, which revealed the following: No contact had occurred between B.C.H. and his mother between January 21, 1984 and the hearing date. The mother had not provided or made any offer to provide any financial assistance for B.C.H.

Three D.F.S. employees testified at the hearing. They stated that numerous attempts had been made to communicate with the mother, both in person and by mail. Attempts were made to advise the mother of various court dates, her right to visit B.C.H., and the need to develop a plan whereby she could seek the custody of B.C.H.

The evidence revealed that the mother was living in a local motel. On one occasion, a D.F.S. employee went to the motel, heard the sound of the television inside, and knocked on the door. The mother responded, "who's there", and when the employee identified herself, there was no further response. Registered mail was sent to the mother for which she refused to execute receipts. On one occasion, an employee of the D.F.S. met with the mother at her sister's home. The employee advised the mother of the need to formulate a plan to regain custody. He also asked the mother if she wished to visit with B.C.H. The mother replied that she never wanted to see B.C.H. again. The employee then informed the mother of the consequences if her parental rights were terminated, and the mother responded, "Go ahead and do it." After again being advised that if the termination was ordered she would not have the right to see B.C.H. again, the mother again told the employee that she never wanted to see B.C.H. again and that the termination should proceed.

Subsequent to the termination hearing, which neither parent attended,[1] the juvenile court found that B.C.H. had been abandoned by his parents for a period of six months or longer, without good cause,

1. The natural father, though identified, was never located and service was had upon him by publication. His parental rights were also terminated and no appeal from that ruling has been presented.

without any communication, visitation or any provision of support from either parent. No findings were made on the other alleged grounds for termination.

Before this court the mother, as appellant, charges that the juvenile court erred in ordering termination of her parental rights because the evidence failed to establish a submissible case of willful abandonment. Appellant argues that there was no evidence of her conduct during the six-month period immediately preceding the filing of the termination petition, that B.C.H. was taken from her custody involuntarily rather than his being abandoned, and that there was no evidence that she was mentally capable of forming an intent to abandon B.C.H.

The termination of parental rights is purely statutory and is governed directly by § 211.442–211.467, RSMo Supp.1984. The gravity of parental termination requires strict and literal compliance with the applicable statutes. *In the Interest of W.F.J.*, 648 S.W.2d 210, 214 (Mo.App.1983). A juvenile court may order parental termination if such termination is deemed to be in the best interest of the child and there is clear, cogent and convincing evidence that one or more of the conditions prescribed by § 211.447 is shown to exist. *See* § 211.-447.2, RSMo Supp.1984.

The party invoking the statute, the juvenile officer herein, must bear the burden of proof. *W.F.J., supra.* It has been held that this burden is met when the evidence "instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *In re Adoption of W.B.L.*, 681 S.W.2d 452, 454 (Mo. banc 1984), citing *In re O'Brien*, 600 S.W.2d 695, 697 (Mo.App. 1980).

The majority opinion is correct when it declares that review of termination proceedings is upon the same standard as in all other civil court-tried cases. A judgment will be affirmed unless unsupported by the evidence, it is against the weight of the evidence or it erroneously declares or

applies the law. *W.B.L., supra* and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The trial court is accorded deference regarding the resolution of fact issues and the credibility of witnesses. The presence of contrary evidence does not necessarily demonstrate that a judgment is against the weight of the evidence. *W.B.L., supra.* Only when a reviewing court is of the firm belief that a judgment is wrong will it reverse. *Murphy v. Carron, supra* and *H.D. v. E.D.*, 629 S.W.2d 655, 657 (Mo.App.1982). When a reviewing court is asked to review the sufficiency of the evidence, the evidence and all reasonable inferences which may be drawn from that evidence are considered in a light most favorable to the juvenile court's judgment. *In re B.G.S.*, 636 S.W.2d 146, 148 (Mo.App. 1982).

Termination herein was based upon a finding of abandonment under and pursuant to § 211.447.2(1)(2)(a) a. and b. That statute reads as follows:

2. The juvenile court may, upon a petition filed by the juvenile officer under this section, terminate the rights of parent to a child if it finds that such termination is in the best interest of the child and one or more of the following conditions are found to exist:

(1) When the parent has consented in writing to the termination of his parental rights;

(2) When it appears by clear, cogent and convincing evidence that one or more of the following conditions exist:

(a) The parent has abandoned the child. The court may find that the parent has abandoned the child if, for a period of six months or longer for a child over one year old or a period of sixty days or longer for a child under one year of age at the time of the filing of the petition, either of the following has occurred:

a. The parent has left the child under such circumstances that the identity of the parent of the child was unknown and could not be ascertained, despite diligent

searching, and the parent has not come forward to claim the child;

b. The parent has, without good cause, left the child without any provision for support and without any communication or visitation from the parent. Evidence that the parent has acted to support, to communicate with or to visit the child during the period may be disregarded if such acts of the parent appear to have been merely a token effort;[2]

Appellant argues that the evidence presented herein failed to make a submissible case of willful abandonment under and pursuant to the foregoing § 211.447.2(1), (2)(a)a and b. She further relies upon *In re Trapp*, 528 S.W.2d 489, 495 (Mo.App.1975). She asserts in her argument that the parent's conduct, in order to constitute willful abandonment, must have occurred during a six-month period immediately preceding the filing of the petition to terminate parental rights. She further asserts there was no such evidence in the prior proceedings. Appellant's argument is without merit both upon the law and under the facts herein.

In the first place, appellant's reliance upon *Trapp* is misplaced. *Trapp* was a decision predicated upon the 1969 parental rights statute, which was repealed in 1978. That statute (§ 211.441, RSMo 1969) provided for termination if there was clear, cogent, and convincing evidence of abandonment "for one year or more immediately prior to the filing of the petition," and said termination was in the best interest of the child. The successor statute, RSMo 1978, like the 1984 amended version applicable to the present case, omitted the above-quoted language.

**2.** For further revision of this section, see 1985 amendments thereto which are not applicable herein.

**3.** Section 211.447, RSMo Supp.1984 was repealed by C.C.S.S.C.S.H.C.S.H.B. 366, H.C.S.H.B. 248, H.C.S.H.B. 372 and H.B. 393 83rd General Assembly, 1st Sess. (1985) which simultaneously enacted § 211.447, RSMo. Supp.1985, which states in part:

2. . . .

Since the Missouri General Assembly, by repeal and revision of the 1969 statute, caused the foregoing language to be omitted, the statute must be considered relative to the legislative intent expressed by the repeal and revision. It is always presumed that the General Assembly acts with complete awareness and knowledge of the existing state of the law. *State v. Rumble*, 680 S.W.2d 939, 942 (Mo. banc 1984). The General Assembly is never charged with having done a meaningless act, thus legislative changes regarding statutes are deemed to have an intended effect. *State v. Sweeney*, 701 S.W.2d 420, 423 (Mo. banc 1985). It therefore must be concluded that the deletion of the above-quoted language clearly expresses the intent of the General Assembly to eliminate the requirement that a prescribed period of abandonment immediately precede the filing of a petition for the termination of parental rights and it should be so ruled herein.

This court should also recognize that the deletion of the above-quoted language raises a question concerning the required length of time for which the child must have been abandoned before termination may be complete. Section 211.447.2(2)(a), RSMo Supp.1984,[3] applicable herein, states:

(a) The parent has abandoned the child. The court may find that the parent has abandoned the child if, for a period of six months or longer for a child over one year or a period of sixty days or longer for a child under one year of age at the time of the filing of the petition, either of the following has occurred:

This court should hold that § 211.447.-2(2)(a) establishes that the required period of abandonment is determined by the child's age at the time the petition is filed.

(1) The child has been abandoned. The court shall find that the child has been abandoned if, for a period of six months or longer for a child over one year of age or a period of sixty days or longer for a child under one year of age at the time of the filing of the petition: Note that the new language creates a mandatory finding of abandonment (i.e., "The court *shall find* ...") whereas the previous language simply allowed such a finding (i.e., "The court *may* find ..."). Emphasis added.

For example, if a parent abandons an eleven-month-old child, and a petition to terminate is filed one day before the child's first birthday but the hearing is not held until the child is eighteen months old, the juvenile officer need only show abandonment for a sixty-day period. Therefore, the sixty-day period would be complete when the child becomes thirteen months old and a hearing could commence any time thereafter. On the other hand, if a parent abandons a three-year-old child and a petition to terminate is filed two months later, the hearing may commence four months following the filing of the petition because the requisite six-month period of abandonment would have elapsed.

None of the foregoing should be misconstrued as having said that a prior abandonment may no longer be repented, and the repentance of such prior abandonment has occurred if the same is shown by clear, cogent, and convincing evidence. However, this court should rule herein that the foregoing statutory changes demonstrate the legislative intent that once abandonment has been properly established pursuant to the statute by the party bearing the burden of proof (the juvenile officer herein), it then becomes the burden of the parent upon clear, cogent, and convincing evidence to establish that the abandonment has ceased and that termination of his or her parental rights would no longer be appropriate.

Consideration now is given to the factual aspect of the present case. Appellant asserts there was no testimony by any D.F.S. employee who handled this case during a period of six months prior to the filing of the petition for termination. This assertion is refuted by the record upon the testimony of the employee in charge of the case at the time of the termination hearing. This employee testified that she was familiar with the entire case since the time B.C.H. was taken from his mother's custody. This employee testified that she attempted communication with appellant. Other witnesses also supported such efforts. The employee therefore concluded there had been no communication between appellant and

B.C.H. and it may be so inferred. There was no contrary evidence. This evidence clearly supports the juvenile court's finding that there had been neither communication nor visitation.

Appellant extends her argument that there was no showing of a willful abandonment because the same was contradicted by evidence that the child was taken from her custody involuntarily by court order. *W.F.J.*, *supra*, at 215, discloses that generally a finding of abandonment is not compatible with a finding that custody has ended involuntarily. However, the court in *W.F.J.* also noted that abandonment is characterized by a settled purpose to forego all parental duties and relinquish all parental claims. Thus, evidence to forego all parental duties and to relinquish all parental claims after separation, or after the custody has been severed involuntarily by a proper court order, is certainly admissible upon the issue of termination and if such evidence is sufficient under the particular circumstances of a given case, then said evidence is sufficient to support the termination of parental rights upon the charge of abandonment, even though perhaps the initial breach or severance of the parent-child relationship was not occasioned by an act of desertion. *See W.F.J.*, *supra*. This is precisely the case herein in that for a period of some 20–21 months, appellant neither sought visitation nor attempted to communicate with her son. She resisted all efforts to arrange contact to such an extent that in all but one instance, she even refused to discuss the matter. This evidence, standing alone, is sufficient to demonstrate a settled purpose of abandonment and to support the termination of her parental rights.

Generally, the finding of a parent's intent to abandon is an inferred fact to be determined by the consideration of all the evidence relative to the parent's conduct. *W.B.L.*, *supra* at 455. The present case, however, requires no inference. Appellant repeatedly and without equivocation stated that she never again wanted to see B.C.H. and urged the juvenile authorities to pro-

ceed with the termination of her parental rights. Such evidence leaves no doubt that appellant displayed the requisite intent to abandon B.C.H.

The final expansion of appellant's argument centers upon evidence that she sometimes engaged in bizarre behavior such as requiring B.C.H. to wear warm coats in the middle of the summer, and the conclusion by one employee that appellant's behavior indicated that she suffered from a mental or behavioral problem. Based upon this scintilla of evidence, appellant offers the bootstrap assertion that there was a lack of sufficient proof to establish that she was mentally capable of forming any intent to abandon her child.

It is unquestioned that it must be shown that a parent must have sufficient mental capacity to form the intent to abandon the child before termination can be ordered. *In re Baby Girl A,* 481 S.W.2d 602, 604 (Mo.App.1972). Appellant's reliance upon *Baby Girl A* for the proposition that evidence of mental deficiency precludes a termination of parental rights on the ground of abandonment unless the same is established by clear, cogent, and convincing evidence that the parent has the capacity to form an intent to abandon is misdirected. The court in *Baby Girl A* actually held that evidence of a mental deficiency which established that the parent lacked sufficient mental capacity to form the intent to abandon the child precluded termination on that ground. While the foregoing distinction might appear rather minor or even subtle as regards the use of terms, such distinction has a substantial importance relative to its application to the present case.

Appellant herein suggests, whenever there is evidence of mental deficiency, there should be imposed upon the party seeking termination the additional burden of going forward with evidence to establish the parent's ability to engage in intentional conduct irrespective of whether the deficiency has any effect on the parent's capacity to form an intent. Cases dealing with this issue in the past seemed to have merely glossed over this important matter and

have decided the overall issue of intent by merely concluding in general terms that the burden of proving intent was met, or in other cases that such burden was not met. In other words, the cases seemed to have refused or failed to discuss the precise question of who has the burden of injecting the issue of lack of capacity to form an intent. To adopt the position of appellant, that is to impose upon the party seeking termination the additional burden of going forward with evidence establishing the parent's ability to engage in intentional conduct irrespective of whether the deficiency has any direct bearing or effect upon the capacity to form an intent, imposes in some if not most cases an impossible burden. The present case illustrates this quite well whereas appellant successfully isolated herself and persisted with an uncooperative attitude.

To be sure, and as noted above, termination statutes are to be strictly construed and the burden of proof rests with the party seeking to invoke the statute throughout the proceedings. Nevertheless, as the majority opinion notes, the law favors the construction of statutes which is in harmony with reason and common sense and which tends to avoid unreasonable and absurd results. *In Interest of Ray,* 602 S.W.2d 955, 958 (Mo.App.1980). Therefore, it should be ruled herein that the petitioning party is not required in the first instance to negate every possible excuse or reason for a parent's failure to support and to maintain contact with his or her child. If such failure arises from good cause, such as the lack of financial ability or, as is claimed herein, because the parent lacked the capacity to form the requisite intent, then the parent should have the burden of injecting the issue. The burden of proof would not be thereby shifted simply by the issue being injected, but rather the petitioning party could then refute the evidence justifying the parent's failure to support and maintain contact before parental rights may be terminated. This conclusion should be reached, for to hold that the petitioning party bears the initial burden of obviating matters not placed in issue not only impos-

es an unreasonable and often impossible burden upon the petitioning party, but allows the simple denial by the parent to defeat the claim for termination. To be sure, on matters of financial inability and or valid reasons for not maintaining contact, the parent is in a far superior position to have possession of the evidence necessary for a more accurate determination of good cause.

As regards the present case, the evidence was totally insufficient to place the mother's ability to form an intent in issue. Neither the reference to her bizarre behavior nor the lay opinion that she suffered from an unspecified mental or behavioral problem was sufficient. Therefore, when application of the holding announced above is made to the evidence in the present case, it must be concluded that the juvenile officer, as petitioner, satisfied his burden of proof.

As a matter of clarification regarding the sufficiency of the evidence to establish mental capacity, this court should note an inconsistency in the case law concerning evidentiary requirements. A recent decision of this court, *In re S.P.W.*, 707 S.W.2d 814, 823–825 (Mo.App.1986), in my opinion, went a step too far in holding that the testimony of a psychologist was inadequate to establish a person's mental condition. This is so because the Missouri Supreme Court has ruled that the opinion of a psychiatrist would not, of itself, outweigh or refute a contrary opinion by a psychologist. *In Interest of C.L.M.*, 625 S.W.2d 613 (Mo. banc 1981). *C.L.M.* is binding upon this court as the latest pronouncement by the Missouri Supreme Court.

It is upon the foregoing basis that I would affirm the judgment.