HANKINS CONSTRUCTION COMPANY, Plaintiff-Respondent,

v.

MISSOURI INSURANCE GUARANTY ASSOCIATION, Defendant-Appellant.

No. 51187.

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 16, 1986.

Motion for Rehearing and/or Transfer Denied Feb. 11, 1987.

Application to Transfer Denied March 17, 1987.

Evans & Dixon, Gerre S. Langton, St. Louis, for defendant-appellant.

Keith Zagar, St. Louis, for plaintiff-respondent.

James C. Wirken, Sue A. Sperry & Wilbur L. Tomlinson, St. Louis, amicus curiae.

PUDLOWSKI, Presiding Judge.

This is an appeal by the Missouri Insurance Guaranty Association, hereinafter MIGA, from a judgment declaring MIGA to be liable to the plaintiff-respondent, Hankins Construction Company (Hankins), for any amounts which Hankins has been or will in the future be required to pay to Jack Christensen, an injured employee of Hankins, under a temporary or partial award of compensation previously made by the Division of Worker's Compensation of the Missouri Department of Labor and Industrial Relations, or under any award for permanent disability made to Jack Christensen in the future. The trial court also ordered MIGA to reimburse Hankins in the amount of $1,687.50 for attorney's fees expended by Hankins in providing a defense to Christensen's claim for compensation from the time that Hankins first made a demand on MIGA for a defense until MIGA agreed to defend the claim. The judgment is affirmed as modified.[1]

The parties stipulated in the circuit court that on December 13, 1984 Christensen was injured when he slipped and fell on the job. On January 9, 1985, Christensen filed a claim with the Division of Workmens' Compensation. At the time of Christensen's injury, Hankins was insured by a policy of Workers' Compensation liability insurance with Optimum Ideal Insurance Company. The policy covered all of Hankins' liability under the Workers' Compensation Law, set out in § 287.010 et seq. of the Missouri Revised Statutes. Hankins made a demand on Optimum Ideal to defend the claim, but no defense was forthcoming.

On February 7, 1985, Optimum Ideal was decreed insolvent by a New York court, and the New York Superintendent of Insurance was ordered to take possession of the insurer's property and to liquidate the business. The parties' stipulation of facts includes the agreement that Optimum Ideal was an "insolvent insurer" under the requirements of § 375.785.3(3). Hankins presented a claim based on the Workers' Compensation claim to the State of New

---

1. We were assisted on appeal by the excellent amicus curiae briefs of Gusdorf Corporation and the Independent Insurance Agents of Missouri.

York Insurance Department, Liquidation Bureau. That claim was filed on April 22, 1985, within the time allowed by the New York authority and the time provided for by § 375.785. Christensen, however, has failed to file a proof of claim either with the New York authorities or with MIGA, which was organized both to protect injured third parties and those whose insurers have become insolvent. *See Qualls v. Missouri Insurance Guaranty Association*, 714 S.W.2d 732, 734, 735 (Mo.App. 1986). MIGA is funded by all licensed insurers within the state.

On June 25, 1985, the Administrative Law Judge for the Division of Workers' Compensation entered a Temporary or Partial Award, finding that Christensen's injuries were sustained in the course of his employment with Hankins. Hankins was ordered to pay $3,227 to Christensen to cover his past medical bills and to provide him with any and all needed treatment from the date of the order forward. Hankins was further ordered to pay temporary total disability of 20³/₇ weeks at the rate of $222.73 per week, a total of $4,550.06, and to continue the payment of $222.73 so long as Christensen remains unable to return to work. No final award was issued, and the question of whether to award permanent disability benefits was deferred.

On July 30, 1985, Hankins transmitted to MIGA a copy of the proof of claim which it had filed with the New York Liquidator. However, it was not until August 22, 1985 that MIGA assumed the obligation of defending Christensen's claim. In defending the claim up until that point, Hankins' attorneys had billed the company for 22.5 hours, 3.3 prior to the New York decree of insolvency, and 19.2 hours from that date until August 22nd, at $75 per hour, which was stipulated to be reasonable.

On August 7, 1985 Hankins filed its petition for declaratory relief. The cause was decided on stipulated facts, as stated above. On the seventh of January 1986, the judgment appealed from here was entered declaring in effect that MIGA was required to fully indemnify Hankins for any and all amounts paid or to be paid by Hankins because of the Christensen claim. The judgment further declared that MIGA's obligations were and are identical to those of the insolvent insurer, prior to insolvency.

On January 15, 1986, the circuit court amended its January 7 order to declare that Hankins was entitled to receive interest at the rate of 8% per annum on all amounts paid by it on account of the Christensen claim until reimbursement by MIGA.

On appeal, MIGA contends that it has no liability for the Christensen claim because the election given an injured third party as set out under the Missouri Insurance Guaranty Act to either file a claim against MIGA, thereby releasing the insured pursuant to § 375.785.4(1)(a)c, or to proceed directly against the insured evidences a legislative intent that MIGA not be obligated to indemnify insureds.

Alternatively, MIGA contends that the trial court erred in holding that if benefits were later awarded to Christensen for permanent disability under the Workers' Compensation Law, MIGA would be liable. MIGA argues that permanent partial disability benefits are determined by the type of injury and then calculated by reference to a schedule in the Workers' Compensation Statute, rather than by looking at medical expenses incurred or actual lost wages, for which MIGA is responsible. MIGA further argues that statutorily it is not liable for the first $100 of the amount awarded to Christensen and that its liability is limited by a $50,000 cap. MIGA additionally alleges that it is not liable for attorney's fees. Finally, MIGA argues that the circuit court erred in awarding interest to Hankins because interest is not provided for specifically by section 375 RSMo, which created MIGA and sets out its responsibilities.

■ Hankins contends that MIGA's notice of appeal was untimely and that this appeal should therefore be dismissed in accord with Rule 81.04(a) of the Missouri Supreme Court Rules of Civil Procedure. Rule 81.04(a) states:

No such appeal shall be effective unless the notice of appeal shall be filed not

later than ten days after the judgment or order appealed from becomes final.

The judgment was originally entered on January 7, 1986. Thereafter, MIGA wrote a letter to the court requesting that the January 7 order be amended to include a provision for interest on all amounts paid on the Christensen claim by Hankins, until the time that Hankins was reimbursed by MIGA. On January 15, or January 13 as indicated in MIGA's brief, the typewritten and handwritten dates on the order differ, the circuit court granted MIGA's request. No other after-trial suggestions or motions had been or were made. Hankins contends that pursuant to Rule 81.05(a), the circuit court's order became final on January 15, 1986, or January 13, 1986, and MIGA had ten days from that date to file its notice of appeal. The notice of appeal was not filed until February 13, 1986.

Rule of Civil Procedure 81.05(a) provides:

(a) Finality as Affected by After-Trial Motions. For the purpose of ascertaining the time within which an appeal may be taken, a judgment becomes final at the expiration of thirty days after the entry of such judgment, if no timely motion for a new trial is filed. By leave of the trial court, a notice of appeal may be filed at any time after the expiration of the time for filing a motion for a new trial and within thirty days after entry of judgment. In the event a motion for a new trial is timely filed, the judgment becomes final at the expiration of ninety days after the filing of such motion or, if such motion is passed on at an earlier date, then at the date of disposition of said motion. *Authorized after-trial motions shall be treated as, and as a part of, a new trial motion for the purpose of ascertaining the time within which an appeal must be taken* and all such after-trial motions shall be disposed of at the same time. Any authorized after-trial motion not passed on at the time the motion for a new trial is determined shall be deemed overruled as of the same date. The filing and disposition of such motions has the same effect as to time for appeal in all cases whether or not the motion has any function other than to

seek relief in the trial court. (Emphasis added).

Hankins' argument is that under the above rule, the "motion to modify" the judgment must be treated as the equivalent of a motion for a new trial; and that the ruling on that motion, as the equivalent of a ruling on a new trial motion, therefore made the judgment final for purposes of appeal. We disagree.

What Hankins overlooks is that the order of January 15, 1986, or January 13, 1986, whichever date is correct, did not constitute a ruling on an after-trial motion. In fact no such motion was before the court. The court simply amended its own order, which it had a right to do since thirty days had not elapsed following the entry of the original order. Since there were no after trial motions, the judgment became final no earlier than thirty days after January 7 and thus the notice of appeal filed on February 13, 1986 was timely.

■ We now address MIGA's contention that while Christensen's claim would, within limits, have been covered by the Guaranty Act, Hankins is not entitled to any indemnification under the act because *Christensen* chose not to follow the act's statutory scheme, but rather to pursue Hankins, his employer, directly. We cannot agree with the contention.

On June 17, 1986, Division Four of this court handed down its opinion in *Qualls v. Missouri Insurance Guaranty Association*, 714 S.W.2d 732, cited above. That case, as counsel for MIGA admitted at oral argument, is directly on point on this issue.

The insured in *Qualls* was involved in an auto accident which resulted in several suits being filed against him. He made demand upon his liability carrier, but the company failed to provide a defense and default judgments were entered. Later, the insurer was declared insolvent in Cook County Illinois Circuit Court. The insured's proof of claim, filed in that action, was transmitted to MIGA which refused to pay, claiming, as it has here, that it was liable only to injured claimants who proceeded, under the statutory scheme directly

against it; and that it had no duty to step into the shoes of the insolvent insurer for purposes of indemnifying insureds.

In that opinion, this court discussed the reasons for the establishment of MIGA, which included, as noted above, the purpose of protecting insureds, which might otherwise be forced out of business.[2] In response to MIGA's argument that the election provided to injured third-parties by § 375.785.4(1)(a)c indicates that the legislature intended that a choice by the claimant to proceed against the insured would release MIGA from liability, the *Qualls'* opinion stated:

> To hold that this provision precludes plaintiff from recovering from MIGA under the Act would lead to absured results. In effect, it would lead to the result that because the injured third-parties brought action against the plaintiff directly, rather than the insurer or MIGA, the plaintiff herein is not entitled to recovery from MIGA. This court will favor a construction that avoids this unjust and unreasonable result. *State ex rel. McNary v. Hais*, 670 S.W.2d 494, 495 (Mo. banc 1984).

At page 735.

In the *Qualls'* case, as MIGA concedes, it made all of the arguments that it makes under its Point I here and the court ruled that MIGA was in fact liable to the insured. That holding is binding here. MIGA's first point is therefore ruled against it. Further discussion of this issue can be found in the *Qualls* case.

We next address appellant's contention that MIGA cannot be held liable to Hankins for any award to Christensen for permanent partial disability by the Division of Workers' Compensation, because permanent partial disability awards are calculated in a way that makes them not directly traceable to either medical expenses or lost wages as required by the Guaranty Act.

MIGA is correct that under § 287.190 RSMo Cum.Supp.1984, loss of earning capacity is conclusively presumed and the amount of an award for permanent partial disability is determined by reference to a "schedule of losses" section of the Workers' Act. Thus, while an injury may have had no effect on an individual's long-term earning capacity, he may still be awarded benefits for permanent partial disability. MIGA contends that this means that an award of permanent partial disability is not a covered claim pursuant to the provisions of § 375.785.4(1)(a)b of the Guaranty Act. That section states:

> In the case of claims arising from bodily injury, sickness or disease the amount of any such award shall not exceed the claimant's reasonable expenses incurred for medical, ... services ..., and any amounts lost or to be lost by reason of claimant's inability to work and earn wages or salary or their equivalent....

MIGA fails, however, to note that the reason for § 287.190's presumption is that a permanent injury will in most cases affect earning capacity. The reason for the award of permanent partial disability benefits is to compensate an injured party for lost earnings. The use of the schedule is only for administrative convenience. It simply removes the need to try the issue of what the effect on earning capacity is for each Workers' Compensation claimant, an administrative nightmare in a statutory claims procedure which was intended to be streamlined.

> The Workmen's Compensation Law of Missouri is founded upon the principle of insurance and is in no sense a pension, a bounty or a gratuity.... The theory is to compensate for the loss of earning capacity resulting from injuries received in the course of and as a result of employment.

Cohn, *History of Workmens' Compensation Law*, Vernon's Annotated Missouri Statutes 17, 25 (1978). The use of a schedule of conclusively presumed earnings losses, where the degree of permanent disability is only partial,

> is not however, to be interpreted as an erratic deviation from the underlying principle of compensation law—that ben-

2. It should be noted that the funding for MIGA comes indirectly from insureds because the insurers are required to fund MIGA directly and they pass on this cost to their policyholders.

efits relate to loss of earning capacity and not to physical injury as such. The basic theory remains the same; the only difference is that the effect on earning capacity is a conclusively presumed one, instead of a specifically proved one based on the individual's actual wage loss experience.

2 A. Larson, *The Law of Compensation*, §§ 58.00–58.11 (1983). We do not agree with MIGA that this difference is fatal.

To hold MIGA harmless with regard to any amount awarded to Christensen which is designated as permanent partial disability, would be to relieve MIGA of its obligation to indemnify Hankins with regard to any portion of the awarded amount which does in fact represent lost earning capacity. The obligation to compensate for lost earnings was an obligation specifically imposed by the legislature on MIGA. On the other hand, to hold that in each case where MIGA is involved, a second Guaranty Act hearing or trial court proceeding must be held to determine the portion of the award actually traceable in an individual case to lost earning capacity would, as noted above, be an administrative and judicial nightmare, and would not further the aim of judicial economy.

The schedule was established based on common experience and statistical data, in part because of the practical impossibility of determining exactly what degree of permanent economic effect any given injury or set of injuries will have on any individual's earning ability.

Even if this court determined that the legislature intended that in cases involving the Guaranty Act, the degree of lost earning ability was required to be determined on an individual basis, exact figures would be unavailable. The result of each case-by-case determination would simply be an approximation, which is what is given by the schedule set out in § 287.190.

The policy, discussed above, of protecting insured, as well as third-party claimants, would also be somewhat thwarted by our acceptance of MIGA's restrictive interpretation of § 375.785.4(1)(a)b, because that interpretation would place an extra procedural hurdle in front of insureds and would open them up to possible substantial liability. Requiring a separate hearing or judicial determination to break down the amount of the permanent partial disability award traceable to lost earnings in any case where such an award was made, would require the insureds additional legal expense. Such a proceeding would also align MIGA, which as noted above was designed to protect insureds, against the insureds, and would tend to break down cooperation between insureds and MIGA.

Our goal in statutory construction is to construe the statute involved in accord with the General Assembly's intent and in such a way as to further the purposes for which the statute was passed. *Bartlett & Company Grain v. Director of Revenue*, 649 S.W.2d 220, 223 (Mo.1983); *ARO Systems, Inc. v. Supervisor of Liquor Control*, 684 S.W.2d 504, 508 (Mo.App.1984). Also, "the law favors the construction of statutes which is in harmony with reason and common sense and which tends to avoid unreasonable and absurd results." *In the Interest of B.C.H., a Minor, T.D.C., Juvenile Officer v. W.S.H.*, 718 S.W.2d 158 (Mo.App.1986). For the reasons stated above, to interpret § 375.785.4(1)(a)b so as either to eliminate completely MIGA's liability for permanent partial disability awards or to require a break down of what part of any such award was actually, in the individual case, attributable to lost earning capacity would not be in accord with the Guaranty Act's purposes and would not be in harmony with reason or common sense. We therefore hold that permanent partial disability awards made under the Workers' Compensation Law are in fact awards for future lost earnings and are part of MIGA's statutory responsibility.

MIGA's point relied on also seems to indicate that it cannot be held to be obligated for an award for permanent *total* disability because such awards are not traceable to lost earnings. This contention by MIGA is frivolous and requires no fur-

ther consideration other than to refer it to § 287.200.1, which clearly ties permanent total disability benefits to actual lost earnings.

■ As to MIGA's contention that its liability is limited to that amount of a covered claim which exceeds $100 and is less than $50,000, there can be little debate. Subsection 4(1)(a) of § 375.785 states in part that MIGA's "obligation shall include only that amount of each covered claim which is in excess of one hundred dollars and is less than fifty thousand dollars." To the extent that the circuit court's order does not make the fifty thousand dollar ($50,000) limit on the covered claim clear or imposes liability for the first one hundred dollars ($100), the judgment is modified and MIGA's liability is so limited.

We next look to MIGA's argument that the trial court erred in awarding $1,687.50 in attorney's fees to Hankins, an amount which covered the entire 22.5 hours which Hankins' attorneys had billed up until August 22, 1985, when counsel for MIGA took over the defense of the Christensen claim.

MIGA contends:

a.) that, pursuant to § 375.785.4(1)(a)(a), its duty to defend a claim does not begin until a proof of claim has been filed with the New York Liquidator (April 22, 1985, in this case);

b.) that Hankins claim for attorneys' fees does not arise out of nor is it within the coverage of the insurance policy, but arises from the separate contract for legal services between the insured and the insured's attorney;

c.) that alternatively, any amounts owed should not include fees incurred prior to the insurer's insolvency, or during the 60 day stay period provided immediately after the date of insolvency and/or prior to the time plaintiff filed a claim on April 22, 1985 with the New York Liquidator;

d.) that there was no evidence showing the date Hankins first made demand on the Guaranty Association for defense, and the evidence indicated that MIGA did

not receive a duplicate copy of the proof of claim from the New York Liquidator until July 30, 1985, and thus it had not duty to provide a defense until that date; and

e.) that subsection 14 of § 375.785 exonerates MIGA from liability because of any alleged failure to perform a duty under the act.

We will address these allegations severally.

Section 375.785.4(1)(a)(a) states in pertinent part that "[a]ll covered claims presented within the time provided by the court shall be transmitted to the association...." It does not address the question of when MIGA's duty to defend arises.

■ Appellant's contention that Hankins' claim for attorneys' fees does not arise from the insurance policy and is therefore not part of a covered claim is equally devoid of merit. This point was dealt with in *Qualls, supra,* 714 S.W.2d at page 736, where this court stated that "[b]y requiring MIGA to take over the 'rights, duties, and obligations of the insolvent insurer' [pursuant to § 375.785.4(1)(b)] the legislature clearly continued the insured's protection under his policy of insurance. That protection includes defense...." Hankins established in the court below that under its insurance policy, as under most policies, including the one in *Qualls,* its insurer, Optimum Ideal, was obligated to provide, at the insurer's expense, a defense to claims arising under and within the coverage of the policy, such as the Christensen claim. Pursuant to § 375.785.4(1)(b) when Optimum Ideal became insolvent, the obligation to provide a defense became an obligation of the Guaranty Association.

MIGA's argument that any amount owed should not include attorneys' fees incurred prior to insolvency, or during the sixty (60) day stay period provided after the date of insolvency and/or prior to the filing of the proof of claim in New York ignores both the clear meaning of § 375.785.4(1)(a) and the practical aspects of Hankins' situation.

Section 375.785.4(1)(a) provides that a covered claim in one which exists against the insurer "prior to the date of entry of a decree or judgment pursuant to § 375.560 [which relates to when a director of the insurance division may institute proceedings to wind up companies] or a judicial determination by a court of competent jurisdiction in the insurer's domiciliary state [in this case, New York] that an insolvent insurer exists and arising within thirty days of the date of the first decree." Hankins' claim for a defense, free of cost to it, clearly arose on January 9, 1985, when Christensen filed his claim. Thus, Hankins' claim for a defense to the Christensen claim was one which existed against the insurer prior to February 7, 1985, when New York decreed Optimum Ideal to be insolvent.

MIGA is, of course, correct that pursuant to § 375.785.10, all proceedings in which the insolvent insurer is a party in any court in this state are to be stayed for sixty (60) days from the date the insolvency is determined. However, the 60 day period was provided so that MIGA would have the opportunity to prepare to step into the proceeding and take over the defense, and to provide the claimant with the opportunity to drop the previous proceedings and proceed administratively directly against the association. It would not be reasonable to interpret it, as MIGA does, to mean in a case such as the one at bar, where MIGA has not agreed to provide a defense and the insured has already hired attorneys to represent it, because the insurer had failed to do so prior to the insolvency, that the attorneys already working on the case must do nothing for sixty days. Also, in this case, the insurer had not been found by a court to be obligated to defend a party nor had it admitted that it was liable to defend a party, and it had not been named as a party in the Christensen Workmen's Compensation proceeding, therefore no stay was granted. Under these facts, we cannot hold that the attorneys for Hankins acted unreasonably in continuing to work on the case and nothing within the clear language of § 375.785.10 indicates that such fees are not the obligation under subsection 4(1)(b) of MIGA.

We also note that neither the date on which the insured files a proof of claim with the New York liquidator nor the date on which that proof of claim is transmitted to MIGA is the date which triggers MIGA's obligations to the insured. In fact no date per se triggers such obligations. They are triggered by the insolvency itself, and nothing in the statute indicates otherwise. The purpose in requiring transmittal of the proof of claim to MIGA is to insure that MIGA is notified that its obligations have begun. The reason for an insured to file the proof of claim in the proper place is not to make MIGA liable at all, but to preserve its rights against the insurer. *See* § 375.-670. The statute does not indicate therefore that the filing of a proof of claim or the transmittal of that proof of claim to MIGA is a condition precedent to MIGA's duty to fulfill its obligations. Certainly MIGA is entitled to reasonable notice of an insolvency so that it can act accordingly. However, once it is determined that the underlying claim is in fact a covered claim, MIGA steps into the shoes of the insolvent insurer and has all the "rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." § 375.785.4(1)(b). If Optimum Ideal had not become insolvent, it would have been liable to Hankins for any amounts expended by Hankins in defending the Christensen claim until the day it took up that defense. Thus, MIGA was liable. This holding also refutes the last contention of appellant's subpoint c and subpoint d.

■ We next focus on MIGA's final subpoint, that subsection 14 of § 375.785 exonerates MIGA from any liability with respect to any failure by it to perform its duties under the Act. If we followed this clearly absurd argument to its logical conclusion, we would have to hold that MIGA could refuse to perform its duties at any time and nothing could be done. Subsection 14 does in fact mean that MIGA cannot be liable for penalties awarded because

of its actions or its failure to act. *See Pannell v. Missouri Insurance Guaranty Association*, 595 S.W.2d 339, 352 (Mo.App. 1980). However, here the very reasonable attorneys' fees awarded were not awarded to penalize MIGA. They were awarded because it was MIGA's obligation to provide and pay for a defense, not Hankins. MIGA was simply ordered to fulfill its obligations.

■ With respect to MIGA's final point, that it cannot be held liable for interest on amounts expended by Hankins for the Christensen claim, we agree.

"[I]t is clear that the limits of the association's liability are tightly drawn by the legislation which created it." *Pannell v. Missouri Insurance Guaranty Association, supra*, 595 S.W.2d at 352. There is no provision in the statute which would allow the awarding of interest and the award of interest did not arise directly from the insurance policy or from the insurer or MIGA's obligations or duties under the policy.

Of course, the normal rule is that a party may not invite error and then complain on appeal that the error invited was in fact made. *Gambrell v. Kansas City Chiefs Football Club*, 621 S.W.2d 382, 386 (Mo. App.1981); *In re Kinnick*, 621 S.W.2d 104, 106 (Mo.App.1981). In this case it was MIGA that wrote the circuit court asking that interest be awarded and thus it was MIGA which invited the error. However, since the circuit court lacked authority to impose liability on MIGA beyond that liability statutorily provided for, we are constrained to hold that the trial court exceeded its jurisdiction in making the interest award. The circuit court's judgment is thus modified to eliminate the provision in the amended order allowing for interest at eight percent per annum.

The circuit court's judgment is modified to the extent that it does not provide that MIGA's liability on the covered claim is limited to fifty thousand dollars ($50,000) or provides liability for the first one hundred dollars ($100) of the covered claims. The judgment is also modified so as to remove the provision for interest. In all other respects, the judgment is affirmed.

GARY M. GAERTNER and KAROHL, JJ., concur.