Ann **MILLER,** Appellant,

v.

**MUNICIPAL THEATRE ASSOCIATION OF ST. LOUIS, a corporation, et al.,**
**Defendants-Respondents.**

**No. 37175.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

June 1, 1976.

Motion for Rehearing or Transfer to
Court En Banc Denied
Aug. 18, 1976.

Gray & Ritter, Charles E. Gray, Robert F. Ritter, Mark E. Hughes, St. Louis, for plaintiff-appellant.

Sullivan & Watkins, Hiram W. Watkins, Clayton, for defendants-respondents.

KELLY, Judge.

Plaintiff-appellant, Ann Miller, appeals from a summary judgment entered in behalf of the defendants-respondents, the Municipal Theatre Association of St. Louis and the City of St. Louis by the Circuit Court of the City of St. Louis. We reverse and remand.

Appellant—hereinafter the plaintiff—brought suit against the Municipal Theatre Association of St. Louis and the City of St. Louis [1] for injuries allegedly sustained during the performance of a play—"Anything Goes"—when she was struck by a piece of stage equipment on August 14, 1972. Both the Theatre—as Municipal Theatre Association of St. Louis shall hereinafter be identified—and the City—as the City of St. Louis shall hereinafter be identified—filed a joint Motion for Summary Judgment; the Theatre on the grounds that plaintiff was an employee as that term is defined in § 287.-020(1) [2] and that she had elected to come within the purview of § 287.090(2) both by contract and by virtue of the fact that the Theatre had obtained a Workmen's Compensation Insurance policy. The City's ground for summary judgment was that the action against it was barred by reason of the fact that it was a statutory employer by virtue of § 287.040(1). The defendants filed affidavits in support of their motion wherein it was asserted that a Workmen's Compensation Insurance policy between the

Theatre and Aetna Casualty Insurance Company was in force and effect on the date of the alleged accident and that Aetna had paid $4,161.78 to doctors, hospitals and nurses for the benefit of plaintiff and had issued seven drafts totalling $490.00 to her as indemnity payments. Plaintiff filed her reply affidavit in opposition to the defendants' Motion for Summary Judgment averring therein that she had retained her own arranger, conductor and choreographer for purposes of creating, coordinating, refining and implementing dance routines to be performed by her in the production, etc., that she retained the exclusive right to control the manner, method and means by which she would perform her role, and that she retained and exercised, in accord with industry custom, "creative control" over her performance. She denied that she had at any time agreed to be an employee of the defendants but rather that she occupied the status of an independent contractor. She further denied that the City was at any time engaged in the business of producing any entertainment production at the Theatre, that she had any contract with the City, and asserted that at no time did she or anyone in her behalf accept or consent to Workmen's Compensation payments by Aetna or any other person or firm.

After a hearing on the Motion, the trial court entered Findings of Fact and Conclusions of Law wherein it found that the parties elected and contracted to come under the Workmen's Compensation Act of the State of Missouri, Ch. 287 RSMo 1969, and more particularly § 287.120(1), and the Theatre and the City were thereby released from any common law liability because the plaintiff was an employee of the Theatre and a "statutory employee" of the City. Defendants' Motion for Summary Judgment was sustained.

The only issue on appeal is the sufficiency of the evidence to support the Summary Judgment entered by the trial court on

---

1. Edward M. Greenberg, Executive Producer of the opera production, is a named defendant in Plaintiff's First Amended Petition but he is not a party to this appeal.

2. All statutory references are to RSMo 1969, except § 287.090 refers to that section as amended Laws 1971, p. 84, § 2.

behalf of the defendants. Rule 74.04 governs proceedings in Summary Judgment and provides that judgment shall be rendered, forthwith, if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law; and in no case shall a summary judgment be rendered on an issue triable by jury or the court without a jury unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law.

■ In reviewing a Summary Judgment entered by the trial court, it is the duty of the appellate court to view the record on summary judgment in the light most favorable to the party against whom the judgment was rendered, *Estate of Sample v. Travelers Indemnity Company,* 492 S.W.2d 829[3] (Mo.1973), *Allen v. St. Luke's Hosp. of Kansas City,* 532 S.W.2d 505, 508[9] (Mo. App.1975).

Viewed from the foregoing vantage point we conclude that the critical issue in this cause is whether the plaintiff was an employee of the Theatre, and, as the trial court also determined, a "statutory employee" of the City. The trial court decided that she was and based its finding on the Actors' Equity Association Stock Jobbing Contract of April 22, 1972, between plaintiff and the Theatre, the Agreement and Rules Governing Employment in Outdoor Musical Stock and the Managers' Stock Company Application, Questionnaire and Agreement incorporated into the Stock Jobbing Contract and the provisions of § 287.-090.

Plaintiff, alleged in her First Amended Petition that she was injured "while performing on stage under a contract in a theatrical production;" and in her affidavit in opposition to defendants' Motion averred that she "did agree" with the Theatre to perform the role of "Reno Sweeney" in the musical production, "Anything Goes." She then further averred those activities she engaged in to prepare for the performance, independently and at her own expense;

that she provided certain enumerated "tools of her trade," professional persons to assist her in arranging her hair, etc., in a manner designated by herself inasmuch as she had retained the exclusive right to make such designation; that her pay was higher than other participants in the production because of her particularly unique and exceptional abilities in singing and dancing and for her acquired excellent reputation as a star performer. She further averred that it was understood between the Theatre and herself that she would retain the right to designate and control the manner, methods and means by which she would perform her role and that she exercised what is known in the entertainment trade as "creative control," i. e., the right of a performer with her high status to designate and control the means by which she performs her work in reaching the desired result or effect.

The Theatre argues that plaintiff was an employee and together with the Theatre elected to come under the Workmen's Compensation Act as evidenced by the contractual documents. It further argues that for members of the Actors' Equity Association to take part in performances, Equity requires the manager of a theatre to sign the Application and Agreement and agree thereby to furnish Workmen's Compensation and Disability Benefits to the "Actor" and therefore plaintiff is bound by ratifying this agreement when she executed the Stock Jobbing Contract to accept the benefits and thereby waived her common law action. It points also to the Agreement and Rules Governing Employment in Outdoor Musical Stock incorporated into the Stock Jobbing Contract and the use of the term "employment" throughout that document as further evidence that plaintiff was an employee and not an independent contractor as she contends.

■ Plaintiff's claim here is not in contract, it sounds in tort. She is not suing on the contract; rather, the contract is interposed as a defense to her common law claim. For the Act to be a bar to her claim, it must first be established that there was an employer-employee relationship existing

at the time of the occurrence by which she sustained her injuries. She relies for recovery not on her contract; rather, she contends that despite what the contract may have provided, there is, and was at that time, in the entertainment trade what is known as "creative control" reserved to a star of her standing whereby she was permitted to retain her independent contractor status.

■■■ The ordinary relationship of employer and employee exists in contract wherein, by the agreement, the employer is the one who employs another to perform service in his affairs and who controls, or has the right to control, the conduct of the other in the performance of the service and the employee is the person employed to perform services in the affairs of the employer and who, with respect to the physical conduct in the performance of the services, is subject to the employer's control. *Fiedler v. Production Credit Association,* 429 S.W.2d 307, 314[12] (Mo.App.1968). In the case where the employee seeks to enjoy the benefits of the Workmen's Compensation Act it is he who must prove the existence of the employer-employee relationship. *Fiedler v. Production Credit Assn.,* supra, l.c. 312[5]. Here, however, the burden to prove this relationship is on the defendants interposing it in support of their Motion for Summary Judgment, and if there is a fact issue on that point they must fail. *E. O. Dorsch Electric Co. v. Plaza Construction Company,* 413 S.W.2d 167, 169 (Mo.1967).

■ It is apparent to us from the trial court's Findings of Fact and Conclusions of Law that it based its ruling solely on the documentary evidence filed in the cause and § 287.090[2], disregarding any pleading or averments contained in plaintiff's affidavit in opposition to defendants' Motion. In this we conclude he erred.

Because of the drastic remedy afforded by summary judgment the Supreme Court in *E. O. Dorsch Electric Co. v. Plaza Construction Co.,* supra, cautioned the courts of this State against rendering summary judgments in suits for damages where the motion for summary judgment is premised upon an interpretation of only the words of a contract interposed as grounds for the summary judgment.

In reversing and remanding a summary judgment in that case the court held that where the terms of the contract were equivocal it was to be interpreted in the light of surrounding circumstances, applicable customs and usages, the contracting parties' own interpretation of the contract, and other evidence bearing on the question of the contract's meaning. l.c. 173[8]. We believe that caution well taken under the circumstances of this case.

The Actors' Equity Association Stock Jobbing Contract here is one for "Principals." A "Principal Actor" is defined in Rule 16(B) to include all members of AEA[3] hired on Equity contracts other than those members engaged on Chorus contracts and/or engaged to perform chorus work. Plaintiff is identified in the Contract as "Actor." Rule 16(A) defines that generic term so that it refers to and includes persons who are members of AEA, including members engaged under Chorus contracts. It is apparent from this that this contract is a general form of contract. The contract specifically provides that the Agreement and Rules Governing Employment in Outdoor Musical Stock and the Managers' Stock Company Application, Questionnaire and Agreement are a part of the Agreement. Except that it requires that plaintiff arrive and report at the theatre location on August 4, 1972, that the first rehearsal is to begin at 10 a. m., and that the opening date of the musical play is to be on August 14, 1972, the contract itself sets out no other duties of the plaintiff than that she play the part of "Reno Sweeney" in the play "Anything Goes." The Managers' Stock Company Application, Questionnaire and Agreement, so far as relevant, provides that the Manager, (the Theatre) agrees that

---

**3.** AEA is "Actors' Equity Association" the exclusive representative of all actors for the purpose of collective bargaining.

all employment agreements with members of the Actors' Equity Association the terms of the Managers' Stock Company Application, Questionnaire and Agreement and the Minimum Contract for Stock shall apply, and further, that "the Actor is entitled to the benefits of all Federal and State . . Workmen's Compensation and Disability Benefits;" that it will pay any and all payments required to be paid by employers under the provisions of said laws, and in the event the services of the Actor are not subject to the compulsory provisions of said laws, then it agrees that it will make application to cover the Actor under the elective provisions of said laws, or the elective provisions of the State of New York or the State of the Actor's residence.

The Agreement and Rules Governing Employment in Outdoor Musical Stock, Rule 32(A), provides that the Manager shall obtain and maintain Workmen's Compensation Insurance coverage for all Actors in his employ. Rule 24 of the Agreement sets out the duties of an Actor, and these are to be prompt at rehearsals and performances, to pay strict regard to makeup and dress, to perform his services to the best of his ability, to abide by all reasonable rules and regulations of the Manager not in conflict with Equity rules, to notify the Manager as far in advance as possible when any songs must be transposed into a different key from the key used in the score provided by the Management, and advises the Actor that repeated lateness "may subject the Actor to disciplinary proceedings in accordance with the Constitution and By-Laws of Equity."

From the foregoing, the trial court found that the terms of the contract are explicit in granting the Theatre "the right to control the manner, method, mode and result of the work of plaintiff, and thus the conduct of the parties need not be analyzed."

■ Having concluded from the documents in the case, other than plaintiff's affidavit, that there existed an employer-employee relationship between plaintiff and the Theatre, the trial court then further found that there was in full force and ef-

fect a Workmen's Compensation policy of insurance issued by the Aetna Casualty & Surety Company to the Theatre and that the Theatre had elected to come within the scope of § 287.090. The error in this finding is that § 287.090 has no applicability to the issues in this case in any manner whatsoever, and further, is not relied on by the Theatre in this court. The election afforded the employer under § 287.090 RSMo 1969, as amended Laws 1971, p. 84, § 2, is available in only those instances where the employer making the election to come under the provisions of the Workmen's Compensation Act, Ch. 287, is engaged in one of the three employments exempted thereby or is a minor employer not determined to be engaged in an occupation not hazardous to employees. There is no evidence in this case that the Theatre is engaged in any of the exempt employments and therefore the fact that a policy of insurance was obtained by the Theatre does not constitute an election within the provisions of § 287.090.

■ Nor do the election provisions of § 287.120(1) have any applicability here until the employer-employee relationship has been established by unassailable proof, and any references to Workmen's Compensation Insurance in the Managers' Stock Company Application, Questionnaire and Agreement and the Agreement and Rules Governing Employment in Outdoor Musical Stock to this effect cannot bring the plaintiff under the coverage unless she is an employee and not an independent contractor. In *Perrin v. American Theatrical Co.*, 352 Mo. 484, 178 S.W.2d 332, 334[4] (1944) it was held that the provisions of the Workmen's Compensation Act cannot be enlarged by contract, waiver or estoppel, and unless it is shown by unassailable proof that plaintiff has an employer she cannot be brought under the Act by contract, waiver, or estoppel.

■ We hold that the trial court erred in sustaining the Theatre's Motion for Summary Judgment.

■ We are also of the opinion that the trial court erred in finding that plaintiff was a statutory employee of the City

within the meaning of that term as it is used in § 287.040[1]. Before one can be held to be a statutory employee three prerequisites must be established: 1) the work was performed under a contract, 2) the injury must have occurred on or about the premises of the employer, and 3) the injury must have occurred while the employee was doing work in the usual course of the business of the employer. *Dunn v. General Motors Corp.,* 466 S.W.2d 700, 702[1] (Mo. 1971). The purpose of this statute is to prevent an employer from evading workmen's compensation liability by hiring independent contractors to perform the usual and ordinary work which his own employees would otherwise perform. *Greiser v. Western Supplies Co.,* 406 S.W.2d 13, 16 (Mo. 1966). While the plaintiff admits that the injuries for which she seeks damages occurred on the City's premises, she denies the other two prerequisites for the application of the statutory employee rule. The defense that the plaintiff was a statutory employee and hence cannot maintain a common law action is an affirmative defense and the burden of both pleading and proving it is on the defendant City in this case. *Grieser v. Western Supplies Co.,* supra, l.c. 16[1]. The other requirements to establish the defense of "statutory employee" in this case which plaintiff denies exist must be proved by the City for it to prevail in this defense. We therefore conclude that the City did not meet its burden by affording unassailable proof that plaintiff was a "statutory employee" and thus barred from proceeding with her cause of action. For this defense to apply, the contract under which the work is done is one whereby the party interposing the defense has contracted either with the plaintiff or plaintiff's employer for the performance of certain duties in furtherance of the usual course of defendant's business and for the primary benefit of the statutory employer. *Ferguson v. Air-Hydraulics Co.,* 492 S.W.2d 130, 137[9] (Mo.App.1973). There is no evidence here that plaintiff ever contracted with the City, and, as we held above there is a live issue whether plaintiff was an employee of the Theatre.

There is here no direct evidence of any contract between the City and the Theatre regarding the use of the Municipal Opera premises. The only evidence is a permit issued to the Theatre for the use of the premises for the purpose of producing a series of operas and to use portions of the structure for offices year-round. Nor is there any evidence that the production of shows is a part of the City's usual business. The trial court found that since the only business carried on on the premises was the performance of this and similar productions, that the premises upon which this play was performed belonged to the City, and that the City had "contracted" with the Theatre to conduct the production of "Anything Goes," therefore plaintiff was a "statutory employee" of the City. However, *Perrin v. American Theatrical Co.,* supra, presented a similar situation and there it was held that the owner of a theatre was not the statutory employer of a musician, employed by a third party, who was injured while performing in the theatre. A distinction was made in *Perrin* between the usual operation of a theatre business and the production of shows therein. Under the evidentiary materials and other documents in this case it is impossible to determine whether the production of this play was within the usual course of the business of the City.

For the aforesaid reasons we hold that the trial court also erred in sustaining the Motion of the City for summary judgment.

Reversed and remanded.

SIMEONE, P. J., and GUNN, J., concur.