**BANNER IRON WORKS, Appellant,**

v.

**Elton MORDIS, Respondent.**

**No. 46450.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 29, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 12, 1984.

Gilbert D. Connor, St. Louis, for appellant.

William L. Berry, Dakin Williams, Collinsville, for respondent.

REINHARD, Judge.

Employer appeals from an order of the circuit court affirming an award of $7,591.72 in workmen's compensation benefits to claimant. The sole question for review is whether there was substantial and competent evidence to support the award.

Claimant contends that he suffered permanent injury, a vasospastic disorder called Raynaud's Syndrome, of the right hand following a traumatic injury to his right shoulder at work. He was found to have 30% permanent partial disability of the right hand and 10% permanent partial disability of the upper right arm and was awarded 33½ weeks temporary total disability and 69.45 weeks of permanent partial disability. We affirm in part and reverse and remand in part.

On appeal, employer contends that as to the claim of permanent partial disability to the right hand claimant failed to prove causal connection between the accident and the vasospastic disorder. Employer argues that the evidence of causation falls short of the substantial evidence required since the medical testimony merely indicated that claimant'. condition could or might have been caused by the accident at work.

Claimant, an iron worker, testified that on January 10, 1978 he was operating a large crane in the course of his employment. While loading a set of panels, the crane began to tip over. As claimant attempted to jump from the crane through its side exit, the sliding door to the exit slid forward and hit his right shoulder. He then pushed the door back and jumped to the ground landing on his right shoulder. Claimant testified that he immediately felt pain in his right shoulder. He then went by cab to the Sutter Clinic. Claimant was referred by the Sutter Clinic to Dr. Manske, an orthopedic surgeon. Before he saw Dr. Manske, claimant saw his personal physician, Dr. M.S. Roa on January 18, 1978. Dr. Roa testified that at that time claimant had slight weakness in his right hand and there was a restriction of the movement of the right shoulder in all directions. Dr. Manske examined claimant on January 30, 1978. At that time, claimant had stinging in his hand as well as soreness around his right shoulder. Dr. Manske found claimant to have tenderness to direct pressure over the part of the shoulder known as the coracoid process and also diminished sensation on the top of the hand between the thumb and index finger. Dr. Manske concluded that the claimant had sustained a contusion or a bruising of the radial nerve in the upper arm and of the coracoid process. Dr. Manske examined the patient again on February 16, 1978 and testified that the claimant's condition had improved. Although he had full range of motion of his shoulder and he was no longer tender over the coracoid process there was some soreness in the shoulder. Dr. Manske saw him for the last time on March 13, 1978. According to the doctor, at that time the claimant had no tenderness at the coracoid process and he had full range of motion at the shoulder. Dr. Manske stated that claimant could return to full duty at work with no restrictions. According to Dr. Manske, the claimant exhibited none of the characteristics of Raynaud's Syndrome in either of his hands during his visits.

According to claimant, during the period from January to April 2, 1978, his shoulder hurt and continued to have numbness, stinging and coolness in his hand. Claimant returned to work on April 2 and worked until May. He stated he was unable to pick up ordinary weight and was unable to grasp a hammer. He testified he returned to see Dr. Rao in May because of bruises on his hand which would not heal and because his hand was cool and constantly hurting.

According to Dr. Rao, he saw the claimant on June 1, 1978 for a wound to the ring finger which would not heal. Dr. Rao's records apparently stated that the wound was a result of a blow to his finger by a hammer. Claimant denied any such incident. He was treated with antibiotics. According to Dr. Rao, claimant returned on June 26, 1978 because the finger still was not healing. Claimant was then referred to Dr. Arnold, who examined him on July 27, 1978. He diagnosed claimant's condition as Raynaud's Syndrome which is a phenomenon involving a narrowing of the arteries which restricts blood flow in the upper extremity, especially the fingers and the hands. At that time, the second, third and fourth fingers of the right hand were tender, cyanotic (blue) at the tips with scabs, and were cool to the touch. Blood flow was constricted in these fingers. An arteriogram revealed a narrowing of the digital vessels in the fingers.

Claimant testified at the time of the hearing in November, 1980, he still had weakness in his shoulder and his hand still stung and was cold. Claimant further testified it was impossible for him to work outside once the temperature dropped below 50°. Dr. Rao testified that claimant had a 30% permanent partial disability. Dr. Rao stated that the cause of Raynaud's phenomenon is not known and he "could not prove any definite etiological diagnosis or come to a definite etiological conclusion about his condition." Dr. Rao testified it was "possible" the accident at work might have caused the disorder, but also said it is "not very likely" since no symptoms of Raynaud's Syndrome appeared until six months later.

Dr. Manske testified that the accident and Raynaud's Syndrome "might or could be related." Dr. Arnold testified that "no one knows for sure what causes these vasospastic problems." It has been described as occurring after trauma. He stated there "could be" a connection between the accident and the disorder, but he could not prove or disprove any causation. Dr. Arnold also stated that the injury to claimant's right hand in April of 1978 was just as likely to have caused his disorder as the accident at work on January 10, 1978.

Employer had claimant examined by Dr. Rodgers on November 24, 1978. Dr. Rodgers testified that claimant had a 3% permanent partial disability of the upper right shoulder.

■ We must affirm the award if it is supported by competent and substantial evidence on the whole record and if the Commission could reasonably have reached its result upon consideration of all the evidence in the light most favorable to the award. *Peet v. Garner Oil Co.*, 492 S.W.2d 103, 105 (Mo.App.1973). The essential elements of a workmen's compensation case are required to be proven in the same manner as essential elements are established in the ordinary action at law. The claimant's burden of proof to establish that his injury resulted from an accident is no greater than his burden to establish any other essential element of his claim. A claimant does not meet his burden of proof by establishing there is a "possibility" the injury was the result of the accident, but by showing with reasonable probability that his injury resulted from the accident. *Davies v. Carter Carburetor Div.*, 429 S.W.2d 738 (Mo.1968); *Smith v. Terminal Transfer Co.*, 372 S.W.2d 659 (Mo.App.1963).

■ In some circumstances, a medical opinion that a condition might or could be caused by the accident can constitute sufficient evidence to establish causation when corroborated by other evidence as in the case of injuries so naturally and directly connected with the accident that proof of causality does not depend on expert evidence. *Davies v. Carter Carburetor Div.*

429 S.W.2d 738 (Mo.1968); *Smith v. Terminal Transfer Co.*, 372 S.W.2d 659 (Mo.App. 1963). That is not the case here.

■ Claimant was not diagnosed as having Raynaud's Syndrome until nearly six months after the injury to his shoulder. The three expert doctors could only state that the accident *possibly* could have caused claimant's condition. In these circumstances, that is insufficient and we must reverse the Commission's finding that claimant had a permanent partial disability of 30% of the right hand.

As to the finding of the Commission that claimant had a 10% permanent partial disability of the upper right arm, we find it supported by competent and substantial evidence. Employer apparently concedes that claimant did have a permanent injury to the shoulder resulting from this accident. It disputes the percentage of that disability.

■ The determination of the specific amount or percentage of disability is a finding of fact within the special province of the Commission. When the Commission makes the determination of disability it is not strictly limited to the percentages of disability testified to by the medical experts. *Barrett v. Bentzinger Brothers, Inc.*, 595 S.W.2d 441, 443 (Mo.App.1980); *McAdams v. Seven-Up Bottling Works*, 429 S.W.2d 284, 289 (Mo.App.1968).

Claimant received temporary total disability payments from January through April, 1978. Employer does not dispute these payments. In addition, the Commission ordered an additional 21³/₇ weeks of temporary total disability from June 26, 1978 through November 22, 1978. All of the evidence in the record establishes that during this period, claimant was being treated for his right hand and not his shoulder. Consequently, the award of the Commission of the additional weeks of temporary total disability must be reversed.

Judgment is affirmed in part; reversed and remanded in part to the circuit court to enter a new judgment affirming the award in part and setting aside the award in part

and remanding the cause to the Industrial Commission for further proceedings not inconsistent with this opinion.

KAROHL, P.J., and CRANDALL, J., concur.