**Scott SEELEY, Respondent,**

v.

**ANCHOR FENCE COMPANY, Appellant,**

**Allied Mutual Insurance Company, Insurer.**

No. 24855.

Missouri Court of Appeals, Southern District, Division One.

Dec. 11, 2002.

Motion for Rehearing or Transfer Denied Jan. 2, 2003.

Mark R. Rudoff, St. Louis, for appellant.

Paul F. Reichert, Margaret A. Schlachter, Springfield, for respondent.

ROBERT S. BARNEY, Judge.

Anchor Fence Co., and Allied Mutual Insurance Co., (collectively "Employer" or "Employer Anchor Fence") appeal the award in favor of Scott Seeley ("Employee"), entered by the Labor and Industrial Relations Commission ("Commission"). In its award, the Commission affirmed the decision of the associate administrative law judge ("ALJ") which determined Employee was entitled to compensation for his temporary partial disability and permanent partial disability and disfigurement, together with payment of his past and future medical expenses.[1] Employer appeals, raising four points of Commission error discussed below. We affirm.

The record shows that Employer was engaged in erecting residential and commercial fencing in Southwest Missouri. In the words of its chief executive officer, Steven Jacobson, in pursuing its usual business, Employer furnished "everything, the materials, the labor, everything that's required to do a complete job." When Employer sold a fence, Employer would either have its own employees or independent contractors install the fence. Indeed, Mr. Jacobson testified that 50% of Employer Anchor Fence's work was performed by independent contractors.

Also, Employer's supervisor would, with regular frequency, come out to the job site to inspect the project for compliance with the plans and specifications as set out by Employer and would suggest modifications or changes as the project progressed.

Before the commencement of any project, Employer's supervisor would see that the materials and equipment were loaded onto a trailer at Employer's business site where installers would thereafter transport the fencing materials from Employer's facility on south Campbell Avenue in Springfield, Missouri, to the construction site where a fence was being put in place.

Employee began working with Lane Neal assisting in building a fence in the summer of 1996, while Employee was still in high school. Later, in the spring of 1997, Employee began working with Jason Neal, the son of Lane Neal, building fences for Employer Anchor Fence. Employee's primary job duties consisted of being a laborer. The average time to complete a fence project was two or three days.

Jason Neal paid Employee in cash. Employee received no W–2 form for 1997 from Jason Neal. Hourly pay was based on $7.00 an hour, based on six, ten-hour days per work week plus a bonus of $50.00 for every 25 posts set in the ground. Employee testified that in the summer of 1997, prior to his accident and injury, he never saw Lane Neal on any project.

Employee also testified that on July 28, 1997, he and Jason Neal traveled to Employer's business site on Highway 160 (Campbell Avenue) in the south part of Springfield, Missouri, so that Jason Neal could pick up his check from Employer for the week's work. On this particular day they were in Employee's pick-up truck. Jason Neal's truck was broken down, and Employee had been driving his own truck going to and from fence construction sites for the week or two prior to the July 28, 1997, accident. Once paid, the usual procedure was for Jason Neal to then pay Employee for the work he had performed.

---

1. The Commission appended its supplemental opinion discussing the issue of "statutory employment" under the Workers' Compensation Law.

On that particular day, while at Employer's facility, one of Employer's employees requested Employee to hook up a tandem trailer with Employee's pickup truck so as to carry a load of materials to a job site so that the materials would be available on the following Monday to begin work. The tandem trailer did not belong to Employee, but he credibly testified that it belonged to Employer Anchor Fence. Employee agreed to assist in the delivery because it would save time the following Monday by allowing Employee and Jason Neal to travel directly to the fence construction site where they were scheduled to work. Employee testified that he had towed similar trailers containing fencing material on other occasions for Employer with Employee's own pickup truck without encountering any hazard or difficulty.

Employer's employees loaded the trailer with bags of cement, fence supplies, posts and equipment. As Employee and Jason Neal began to leave they were stopped by another of Employer's employees and several more bags of cement were loaded on the rear of the trailer. Thereafter Employee and Jason Neal proceeded south on Campbell Avenue, and after a short distance the tandem trailer began unexpectedly weaving from side to side. Before Employee could slow the speed down from 40 miles an hour, the tandem trailer jack-knifed with the pickup and Employee lost control of the vehicle.

Employee suffered severe injuries which required him to stay in the hospital for 16 days. He had a complete separation of the right sacroiliac joint; a non-displaced fracture of the superior dome of the right acetabulum; a fracture of the left pelvic iliac wing; and a fracture of the mid aspect of the left scapula.

Employee went through two surgeries to repair damages from the fractures involving a reduction of the right sacroiliac joint with open reduction and internal fixation applied to the area of the fracture. The second surgery involved an open reduction with internal fixation with the plate and screws inserted in the left iliac wing of Employee's hip. Thereafter, Employee developed a complication of right foot drop, which condition continued to exist at the time of the hearing.[2]

"Our review of the [Commission's] findings is limited to a review of questions of law." *Loyd v. Ozark Elec. Coop., Inc.,* 4 S.W.3d 579, 583 (Mo.App. 1999). "This court will modify, reverse, remand or set aside an award only if the Commission acted without or in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to warrant the making of the award." *Id.;* see § 287.495, RSMo 2000. "When reviewing the sufficiency of the evidence, this court is limited to determining whether the Commission's award is supported by competent and substantial evidence on the whole record." *Loyd,* 4 S.W.3d at 583. "The evidence and inferences are reviewed in the light most favorable to the award, and the Commission's findings will be set aside only when they are clearly contrary to the overwhelming weight of the evidence." *Id.* at 583–84.

Our review essentially involves a two-step process. *Lorentz v. Missouri State Treasurer,* 72 S.W.3d 315, 318 (Mo. App.2002); *Davis v. Research Med. Ctr.,* 903 S.W.2d 557, 570 (Mo.App.1995). "We must first determine whether the whole

---

**2.** Employee testified that prior to the accident he had been in perfect health, participating in high school football, track and soccer. After sustaining his injuries he testified that he was not physically able to engage in any high school sports activities.

record, viewed in the light most favorable to the award of the Commission, contains sufficient competent and substantial evidence to support the Commission's award." *Lorentz,* 72 S.W.3d at 318. "If we find that it does, then we make a determination as to whether the award is against the overwhelming weight of the evidence." *Id.* In this second step, all the evidence in the record is considered, including that unfavorable to the award by the Commission. *Id.* We defer to the Commission on issues of credibility of witnesses and the weight given to the testimony. *Id.* " 'Conflicts in the evidence are to be resolved by the Commission.' " *Id.* (quoting *Searcy v. McDonnell Douglas Aircraft Co.,* 894 S.W.2d 173, 178 (Mo.App.1995)). As always, the criteria should be applied liberally in favor of compensation of the claimant. *Lorentz,* 72 S.W.3d at 318; *Leutzinger v. Treasurer,* 895 S.W.2d 591, 593 (Mo.App. 1995).

■ In its first point, Employer maintains that the ALJ and Commission lacked jurisdiction to render a final award "subject to review by [Commission], as the [ALJ's] award was rendered more than ninety (90) days from the date of the hearing as provided by 8 CSR 50–2.010(14)(D)."

According to Employer, the record demonstrates that although the hearing was conducted on November 9, 2000, the ALJ's "award" was not entered until June 27, 2001, clearly exceeding the time limitation for an entry of an award mandated by the applicable rule.[3]

■ In our review, we first note that the "Commission, like all administrative bodies, maintains only limited jurisdiction as is conferred upon it by statute." *Sodipo v. University Copiers,* 23 S.W.3d 807, 810 (Mo.App.2000). The Commission has the power to enact regulations covering its proceedings in connection with the exercise of its quasi-judicial functions, including all regulations necessary to the efficient internal management of the Department of Labor and Industrial Relations. *See* § 286.060.1(4) and (8), RSMo 2000; *Doe Run Co. v. Brown,* 918 S.W.2d 303, 306 (Mo.App.1996), *overruled on other grounds by Farmer v. Barlow Truck Lines,* 979 S.W.2d 169 (Mo. banc 1998). The "Commission has exclusive jurisdiction in the first instance as to matters covered by the Workers' Compensation Act, and if the Commission issues an award, judicial review proceeds directly to the appellate courts." *Goodrum v. Asplundh Tree Expert Co.,* 824 S.W.2d 6, 9–10 (Mo. banc 1992); *see* §§ 287.470 and 287.480, RSMo 2000.

■ Secondly, we observe that "[r]ules of a state administrative agency duly promulgated pursuant to properly delegated authority have the force and effect of law and are binding upon the agency adopting them." *Missouri Nat'l Edu. Ass'n v. Missouri State Bd. Of Mediation,* 695 S.W.2d 894, 897 (Mo. banc 1985). "In interpreting statutes and rules, the same principles of construction are used." *Morton v. Missouri Air Cons. Comm'n,* 944 S.W.2d 231, 238 (Mo.App.1997). "Words

---

**3.** Rule 8 CSR 50–2.010(14)(D)(2000), is located within "Chapter 2–Procedure" of the Code of State Regulations relating to the Department of Labor and Industrial Relations. The particular rule is set out as follows:

> Within sixty (60) days after the submission of the case or the filing of briefs, whichever is later, the administrative law judge shall issue the award, together with a statement of findings of fact, but in no event longer than ninety (90) days from the last date of the hearing rulings of law and any other matters pertinent to the questions at issue. Signed copies of the award shall be sent to all parties by certified mail.

*See also* § 287.460, RSMo 2000.

used are given their plain and ordinary meaning." *Id.*

In *Farmers & Merchants Bank,* our supreme court noted that "[w]hether the statutory word 'shall' is mandatory or directory is a function of context." 896 S.W.2d 30, 32 (Mo. banc 1995). "Where the legislature fails to include a sanction for failure to do that which 'shall' be done, courts have said that 'shall' is directory, not mandatory." *Id.* at 33. "Moreover, courts have concluded that statutes directing the performance of an act by a public official within a specified time are directory, not mandatory." *Id.* Furthermore, in *Missouri Nat'l Edu.,* our supreme court observed that "the failure of an agency to comply with its own rules may invalidate its actions only when prejudice results." *Missouri Nat'l Edu.,* 695 S.W.2d at 897.

In *Jenkins v. Croft,* 63 S.W.3d 710, 713 (Mo.App.2002), this Court interpreted the time limit provisions of section 455.040.1, RSMo 2000, relating to the Adult Abuse Act. *Id. See* §§ 455.010–455.085, RSMo 2000. The *Jenkins* appellant argued that the word "shall" in section 455.040.1 [4] was mandatory and not directory and that the court's failure to hold a hearing on a full order of protection within 15 days of the filing of the adult abuse petition resulted in depriving the court of subject matter jurisdiction. *Jenkins,* 63 S.W.3d at 713. We determined that section 455.040 specified "no result" or sanction would follow from the court's failure to hold a hearing within 15 days of the filing of the petition, and determined that it was within the court's discretion to set the hearing beyond the 15 days after the petition was filed. *Id.* We also held that the court was not deprived of subject matter jurisdiction

by the court's having set the full order of protection hearing more than 15 days in advance without a showing of good cause. *Id.* We noted that a "contrary construction would only serve to frustrate the goals of the Adult Abuse Act." *Id.* (quoting *Grist v. Grist,* 946 S.W.2d 780, 782 (Mo.App.1997)).

Here, in our review of the pertinent rule's provisions, we do not discern that any sanctions follow from an ALJ's failure to issue an award and other findings within 90 days of the last day of the hearing.

Consistent with the tenets expressed in *Farmers & Merchants Bank,* we conclude that 8 CSR 50–2.010(14)(D) is directory in nature and not mandatory. *Farmers & Merchants Bank,* 896 S.W.2d at 33. Additionally, our review of the rule in context with other rules located within "Chapter 2—Procedure" of 8 CSR 50–2, convinces us that 8 CSR 50–2.010(14)(D) is procedural in nature rather than substantive. "The very object and purpose of the entire act is that substantial rights are to be enforced at the sacrifice of procedural rights." *Wiele v. Nat'l Super Markets, Inc.,* 948 S.W.2d 142, 146 (Mo.App.1997). The ALJ's failure to issue its "award" within 90 days of the last day of the hearing did not deprive the Commission, the ALJ, or the Division of Workers' Compensation of subject matter jurisdiction. *See Citizens for Envtl. Safety, Inc. v. Missouri Department of Nat'l Resources,* 12 S.W.3d 720, 724–26 (Mo.App.1999) (interpreting time deadlines in statutes and regulations relating to the granting or denying of sanitary landfill permits by the Missouri Department of Natural Resources).

Furthermore, we discern that in this instance Employer has suffered no preju-

---

4. Section 455.040.1 provides in pertinent part that:

Not later than fifteen days after the filing of a petition pursuant to sections 455.010 to

455.085 a hearing shall be held unless the court deems, for good cause shown, that a continuance should be granted.

dice from the ALJ's tardiness. *See Missouri Nat'l Edu.*, 695 S.W.2d at 897. Indeed, a contrary construction of the rule in question, which would require a rehearing, would only serve to frustrate the goals of the Workers' Compensation Law among which is "to mitigate losses sustained from accidental injuries received by working persons in the course of employment" in a timely manner. *State ex rel. Lakeman v. Siedlik,* 872 S.W.2d 503, 505 (Mo.App. 1994); *see also* § 287.800, RSMo 2000. Point One is denied.

 In its second point, Employer contends the Commission erred in finding that Employee's injuries were compensable under the Workers' Compensation Act on the basis that Employee was a statutory employee. Employer argues that there is no case authority supporting the proposition that an open and public highway satisfies the criteria of a statutory employer's exclusive control of the premises.[5]

 "The 'statutory employee' provision of the Act establishes a constructive employment relationship in order to extend coverage of the Act to employers who have work done by contract." *Wilson v. Altruk Freight Systems, Inc.,* 820 S.W.2d 717, 721 (Mo.App.1991); § 287.040.1,[6] RSMo 2000; *see McGuire v. Tenneco, Inc.,* 756 S.W.2d 532, 534 (Mo. banc 1988). "Its purpose 'is to prevent an employer from evading workmen's compensation liability by hiring independent contractors to per-

form the usual and ordinary work which his own employees would otherwise perform.'" *McGuire,* 756 S.W.2d at 534 (quoting *Miller v. Mun. Theatre Ass'n,* 540 S.W.2d 899, 906 (Mo.App.1976)). "This Court has interpreted the provisions of the Act broadly in an effort to fulfill the legislative intent that workers' injuries be compensable in a manner consistent with law." *Id.* at 535. "[T]he contract to which Section 287.040.1 refers necessarily includes those contracts which are express or implied, oral or written." *Id.*

 It is settled law that the word "premises" as so used "should not be given a narrow or refined construction." *Sargent v. Clements,* 337 Mo. 1127, 88 S.W.2d 174, 178 (1935). "[R]ather, in keeping with both the spirit and specific direction ... of the Workmen's Compensation Act, [the word premises] should be liberally construed and applied." *Id.* Accordingly, "Missouri courts have broadly construed the term 'premises' in section 287.040.1 RSMo (1994)." *James v. Union Elec. Co.,* 978 S.W.2d 372, 375 (Mo.App.1998). "Premises means 'any place under the exclusive control of the statutory employer where his usual business is being carried on or conducted' including 'locations that temporarily may be under the exclusive control of the statutory employer by virtue of the work being done.'" *Id.* (quoting *Huff v. Union Elec. Co.,* 598 S.W.2d 503, 511 (Mo.App.1980)); *see also Thieme v.*

---

5. Employer cites *Cole v. Town & Country Exteriors,* 837 S.W.2d 580 (Mo.App.1992) in support. In *Cole,* claimant, an independent contractor, was injured on a public road one mile from the job site where he was installing siding for contractor Town & Country Exteriors. The *Cole* court held that claimant was not injured on the "premises" of contractor and thus was not a statutory employee of contractor, although carrying some nails and caulking to the site. *Id.* at 584–85. We distinguish *Cole,* factually.

6. Section 287.040.1, RSMo 2000 provides:

Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

*Tour–Toiseshell, Inc.,* 887 S.W.2d 795, 798 (Mo.App.1994); *Boatman v. Superior Outdoor Advertising Co.,* 482 S.W.2d 743, 745 (Mo.App.1972).

In *Sargent,* claimant's husband was considered a statutory employee when her husband was killed on the right-of-way while acting as an independent contractor in doing blasting work for a contractor who was building a public highway. *Sargent,* 88 S.W.2d at 177–78. Likewise, in *Cobb v. Standard Acc. Ins. Co.,* 31 S.W.2d 573, 575 (Mo.App.1930), claimant's husband was considered a statutory employee when he was killed loading railroad ties aboard railroad cars "some distance away" from the employer's place of business. This Court said:

> The words 'on or about' must be liberally construed. The loading of the ties was an important adjunct to the industry in which defendant was engaged .... [I]t is not unreasonable to hold that the general words 'on or about' the premises would include the loading place located some distance away ....

*Id.* Likewise, in *Simpson v. New Madrid Stave Co.,* 227 Mo.App. 331, 52 S.W.2d 615, 616 (1932), the stave company was engaged in manufacturing barrel staves at its plant in New Madrid, Missouri. It employed Simpson to cut timber in the State of Kentucky, on the other side of the Mississippi River from New Madrid. While overseeing the felling of timber, Simpson was killed when a tree fell on him. In consonance with the liberal construction of the term "premises" the Simpson court set out that the premises of the statutory employer is "any place where, in the usual operation of his business, it is necessary

for those whom he has employed to do the work to be while doing it." *Id.*

Lastly, in *Wilson,* we determined that a plaintiff, when unloading defendant truck company's trailer some distance away from its place of business, and pursuant to contract with trucking company's leased driver, was considered a statutory employee of the trucking company so that workers' compensation was his exclusive remedy. *Wilson,* 820 S.W.2d at 721–23. We determined that under the circumstances set out, the defendant trucking company "had possession of the trailer to the exclusion of the public." *Id.* at 723. We said: "The trailer, while parked at the AWG warehouse for unloading, is a place where, in the usual operation of the defendant's business, it is necessary for the plaintiff to be while doing the work he is employed to do, namely, unloading." *Id.* "As such, the plaintiff was injured 'on or about the premises' of the defendant [trucking company] within the meaning of the [Workers' Compensation] Act." *Id.*

■ Here, unlike *Cole* and its genre of cases involving accidents on public roads,[7] Employee was specifically requested by Employer's employee to tow a tandem trailer loaded with posts and fencing materials, cement and equipment, to a job site where he and James Neal were scheduled by Employer to work the following Monday. Employees of Employer Anchor Fence also loaded the fencing materials, cement and equipment owned by Employer Anchor Fence onto the tandem trailer. Employee had pulled similar supply trailers with his own truck on four or five previous occasions for the purposes of delivering fencing materials to job sites in

---

7. *See,* for example, *Rutherford v. Tobin Quarries,* 336 Mo. 1171, 82 S.W.2d 918 (1935), decided prior to and later distinguished by *Sargent,* 88 S.W.2d at 178–79. With a minimum of analysis, the *Rutherford* court determined that decedent, who was an independent contractor owner and operator of a truck hauling rocks from corporation's quarries, and who was killed 2 1/2 miles from quarries, did not come within purview of § 3308, RSMo 1929, now § 287.040.1. *Id.* at 924. Unlike the instant case, however, the *Rutherford* decedent was not towing a tandem trailer provided by the quarries' owner.

order to construct fences as directed by Employer Anchor Fence. The record shows that the construction of fences was the "usual business" that Employer Anchor Fence was engaged in.[8]

Accordingly, *within the meaning of* § 287.040.1, RSMo 2000, and as previously mentioned, in consonance with our high court's admonition in *Sargent* that "[t]he term 'premises' as so used should not be given a narrow or refined construction, but rather, in keeping with both the spirit and specific direction of the Workmen's Compensation Act, should be liberally construed and applied[,]" 88 S.W.2d at 178 (citation omitted), we determine that at the time of the accident involving Employee, the tandem trailer was considered to have been Employer Anchor Fence's "premises," under Employer's exclusive control, albeit at a temporary location away from Employer's primary place of business. *Wilson,* 820 S.W.2d at 723; *Sargent,* 88 S.W.2d at 178; *Cobb,* 31 S.W.2d at 575; *Simpson,* 52 S.W.2d at 616. The Commission did not err in finding that Employee was a statutory employee of Employer under the provisions of the Workers' Compensation Act. Point denied.

▬ In its third point, Employer posits that the "[a]ward of the [ALJ] and [Commission] of permanent partial disability was erroneous in that it was excessive and against the overwhelming weight of the evidence adduced at hearing." Employer maintains that after his hospitalization, Employee was able to perform a multitude of strenuous activities, including mission work with the Latter Day Saints and as a corrections officer in Wisconsin.

▬ It is the Commission's findings and award, not those of the ALJ, which are reviewed by this Court. *Davis,* 903 S.W.2d at 569. "In a workers' compensation case in which an employee is seeking benefits for PPD [permanent partial disability], the employee has the burden of not only proving a work-related injury, but that the injury resulted in the disability claimed." *Rana v. Landstar TLC,* 46 S.W.3d 614, 626 (Mo.App.2001). "Workers' compensation awards for a PPD are authorized pursuant to § 287.190." *Id.* "The reason for an award of permanent partial disability benefits is to compensate an injured party for lost earnings." *Id.* (quoting *Hankins Const. Co. v. Missouri Ins. Guar. Ass'n.,* 724 S.W.2d 583, 587 (Mo.App.1986)). "The amount of compensation to be awarded for a PPD is determined pursuant to the 'SCHEDULE OF LOSSES' found in section 287.190.1." *Id.* " 'Permanent partial disability' is defined in § 287.190.6 as being permanent in nature and partial in degree." *Id.* "Further, '[a]n actual loss of earnings is not an essential element of a claim for permanent partial disability.' " *Rana,* 46 S.W.3d at 626 (quoting *Wiele,* 948 S.W.2d at 148). "A permanent partial disability can be awarded notwithstanding the fact the claimant returns to work, if the claimant's injury impairs his efficiency in the ordinary pursuits of life." *Rana,* 46 S.W.3d at 626. The Commission has discretion as to the amount of the award and how it is to be calculated. *Id.* "It is the duty of the Commission to weigh that evidence as well as all the other testimony and reach its

---

8. "[U]sual business as used in § 287.040.1, RSMo 2000, refers to those activities (1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory

employer to hire permanent employees absent the agreement." *Busselle v. Wal–Mart,* 37 S.W.3d 839, 842 (Mo.App.2001) (quoting *Bass v. Nat'l Super Markets, Inc.,* 911 S.W.2d 617, 621 (Mo. banc 1995), *cert. denied* 517 U.S. 1208, 116 S.Ct. 1825, 134 L.Ed.2d 930 (1996)).

*own* conclusions as to the percentage of the disability suffered." *Id.* "Decisions concerning the weight to be given expert opinions lie within the Commission's sole discretion and cannot be reviewed by this court." *Smith v. Richardson Bros. Roofing,* 32 S.W.3d 568, 575 (Mo.App.2000).

Employee testified that after his period of hospitalization he was confined to a wheelchair for a "month and half to two months." Then he was on "crutches for about another month," and used a "cane to walk around because I had a foot drop on my right foot." After missing about two months of high school in the fall of 1997 he was able to return. Although prior to his injuries he was in perfect health, participating in high school football, soccer and track, he was unable to engage in any high school sports activities. In December of 1998 he commenced his religious mission work with the Latter Day Saints in the Chicago, Illinois, area. He testified that at first he had no difficulty in walking for numerous hours and weeks on end but "it started to bother me quite a bit," particularly in his "hips and my back," and by March of 1999 he terminated his mission work.

Later, in the fall of 1999, after passing the "written test" given by the Michigan Department of Corrections, he engaged in the physical training program of his work which he completed with difficulty because he was "not able to do very much of anything." Shortly thereafter he voluntarily quit his position because "physically I couldn't do it." He testified that "[i]t was hard to get up out of bed. It was hard to walk. It was painful in my lower back. I had to put ice and heat pads."

At the time of the hearing Employee testified that he still had "constant back pain," and problems with his knees and ankles. He related that "I always am tripping from my right foot," and "I can just be walking, and I'll catch my toe and

trip." While he stated that in his present job he was required to stand in front of a computer most of the day he was able to complete the task because he received frequent breaks.

 Dr. Norbert T. Belz, an occupational medicine specialist, completed an independent medical examination of Employee on October 1, 1999, and opined that as a result of his extensive injuries suffered on July 28, 1997—previously set out in the early part of this opinion—Employee had sustained a total of 253.9 weeks of permanent partial impairment. It was on this basis that the ALJ and the Commission determined that Employee was entitled to a PPD rating of 63% of the body as a whole. While other medical expert testimony made lower ratings, we defer to the Commission on issues concerning credibility and weight to be given to conflicting evidence and testimony. *Maas v. Treasurer of Missouri,* 964 S.W.2d 541, 545 (Mo.App.1998). "When medical opinions conflict, the Commission decides which to accept." *Lytle v. T-Mac, Inc.,* 931 S.W.2d 496, 502 (Mo.App.1996); *Hawkins v. Emerson Elec. Co.,* 676 S.W.2d 872, 877 (Mo. App.1984). " 'The determination of a specific amount or percentage of disability is a finding of fact within the special province of the Commission.' " *Lytle,* 931 S.W.2d at 502 (quoting *Banner Iron Works v. Mordis,* 663 S.W.2d 770, 773 (Mo.App.1983)). There was substantial and competent evidence to support the Commission's findings as to the degree permanent partial disability suffered by Employee. *Lytle,* 931 S.W.2d at 502. Point denied.

 In its last point, Employer posits that the ALJ and the Commission incorrectly calculated Employee's *rate* of temporary total disability because it was against the weight of the evidence adduced at the hearing.

In the argument portion of its brief, Employer challenges Employee's testimo-

ny that he earned $7.00 per hour for a 60–hour week plus bonuses. It maintains that Employee had no documentation to substantiate how much cash he was or was not paid during the eight weeks of the summer of 1997 that Employee had worked prior to his accident.[9]

The burden of proving entitlement to temporary, total disability benefits was on Employee. *Boyles v. USA Rebar Placement, Inc.,* 26 S.W.3d 418, 424 (Mo. App.2000). "The purpose of temporary, total disability awards is to cover the employee's healing period, so the award should cover only the time before the employee can return to work." *Id.* " '[A] claimant has the burden of proving all of the material elements of the claim, and that includes sufficient proof for the Commission to determine the proper compensation rate.' " *Smith,* 32 S.W.3d at 575 (quoting *Sanders v. St. Clair Corp.,* 943 S.W.2d 12, 18 (Mo.App.1997)).

Here, Employee testified at the hearing that he worked for a period of eight weeks with Jason Neal during the summer of 1997. He related that he worked six days a week at ten hours per day or about 60 hours a week. He said he was paid about $7.00 an hour and a bonus for every 25 posts set, but related he received a bonus of $50.00 on only two or three occasions. He acknowledged earning about $420.00 a week and that his total gross wages were $3,460.00 for the summer of 1997. Employee also provided a contradictory version of his earnings in a recorded statement to Employer's insurance carrier made in late 1997. In that statement Employee related he was making $200.00 to $300.00 a week.

While Employee had little or no documentation as to the wages he was paid, it was within Commission's discretion to give credit to Employee's testimony. *See Bewig v. Schnucks Markets,* 809 S.W.2d 461, 463 (Mo.App.1991). This Court defers to the Commission on issues involving the credibility of witnesses and the weight given to their testimony. *Smith,* 32 S.W.3d at 576. Thus an inquiry on questions of fact is limited to a determination of whether the Commission could have reasonably reached the result it did. *Id.*

The ALJ and the Commission determined that a fair average weekly wage for Employee was $300.00. This was within the range of the evidence presented. Viewing the evidence in the light most favorable to the award, we are unable to conclude that the Commission erred in arriving at the compensation rate applicable to this claim. *See Sanders,* 943 S.W.2d at 18. The Commission's findings relative to the compensation rate were not clearly contrary to the overwhelming weight of the evidence and were supported by substantial and competent evidence. *Smith,* 32 S.W.3d at 576. Point denied.

The award of the Commission is affirmed.

MONTGOMERY, P.J.,concurs.

GARRISON, J., concurs in separate opinion.

PHILLIP R. GARRISON, Judge, concurring.

I concur with the result reached in this case, and write separately only to explain why I believe this case is distinguishable from *Citizens for Envtl. Safety, Inc. v. Missouri Department of Nat'l Resources,* 12 S.W.3d 720 (Mo.App. S.D.1999), cited in the principal opinion, and from which I

---

9. The Commission awarded compensation to Employee in the amount $1,458.00 during his period of temporary total disability. It determined that Employee was temporarily totally disabled from the date of his injury until September 15, 1997, a period of 7 2/7 weeks. Employer does not contest this period of temporary total disability.

dissented. In that dissent, I pointed out that in *State ex rel. Missouri Highway and Transp. Comm'n v. Muegge,* 842 S.W.2d 192, 195 (Mo.App. E.D.1992), the court acknowledged that "shall" is generally mandatory, and that cases deciding whether a requirement is mandatory or directory look at the effect of ruling one way or the other. *Citizens for Envtl. Safety, Inc.* at 730. I also expressed my opinion that *Farmers and Merchants Bank v. Director of Revenue,* 896 S.W.2d 30 (Mo. banc 1995), did not establish the ironclad rule that a statute is automatically directory rather than mandatory anytime "shall" is used without the inclusion of a sanction for the failure to comply with it. *Citizens for Envtl. Safety* at 730. Rather, I believe that the result in *Farmers and Merchants Bank* was reached upon a review of a statute in the context of the facts of that case. In *Citizens for Envtl. Safety,* I concluded that "shall," as used in the statute under consideration there, was mandatory, considering the apparent intent of the legislature as gleaned from the purpose of the statute, the context in which it was used, and the effect if it and other statutes utilizing the term were interpreted as being directory. *Id.* at 730.

In this case, I believe that the determination that "shall" is directory is correct. Otherwise, the Commission would lose jurisdiction to award compensation to an injured employee, a result obviously at odds with the concept that the Workers' Compensation Law is to be liberally construed with a view to the public welfare, and in furtherance of the public policy that an employee is entitled to have compensation for any injury that is clearly job-related and arises out of and in the course of his employment. *Parrott v. HQ, Inc.,* 907 S.W.2d 236, 240 (Mo.App. S.D.1995). "Accordingly, our courts consistently hold that in construction of the Act, any doubt or question as to the right of an employee to compensation shall be resolved in favor of

the injured employee." *Id.* (citing *Wolfgeher v. Wagner Cartage Serv., Inc.,* 646 S.W.2d 781, 783 (Mo. banc 1983)).

I concur with the principal opinion based on the context in which the term "shall" is used here, and considering the effect if construed differently. In doing so, I continue in my belief that the intent surrounding the use of the term "shall," and the context in which it is used, should determine whether it is mandatory or directory rather than an automatic rule applied in the absence of a sanction for a violation of a statute.