Gerald Travis GRUBBS, Jr., Respondent,

v.

STANDARD INSURANCE COMPANY, Appellant.

No. ED 94568.

Missouri Court of Appeals, Eastern District, Southern Division.

Nov. 30, 2010.

---

3. The UPL is located in Chapter 358 of the     Missouri Revised Statutes.

Richard J. Pautler, Thompson Coburn LLP, St. Louis, MO, for Appellant.

Kenneth A. Seufert, Law Office of Seufert & Dudley, P.C., Farmington, MO, for Respondent.

KURT S. ODENWALD, Judge.

### Introduction

Plaintiff Gerald Grubbs, Jr. (Claimant) filed a declaratory judgment action against Defendant Standard Insurance Company (Standard) seeking a determination of benefits coverage under a group long-term disability policy. In particular, Claimant sought a ruling that Standard was not entitled to offset Claimant's disability benefits by the amount Claimant received in settlement of his workers' compensation claim. Standard appeals the trial court's summary judgment order in which the trial court concluded that Standard may not offset Claimant's long-term disability benefits by the amount of the compromise settlement reached by the parties in Claimant's workers' compensation claim. Because the express provisions of Standard's group disability policy allow a set off of any amount received by Claimant for lost wages under the workers' compensation laws, we reverse the trial court's judgment.

### Factual and Procedural Background

Claimant, an employee of the State of Missouri (State) and a member of the Missouri State Employees Retirement System (MOSERS), was insured by a group long-term disability insurance policy (Policy) issued by Standard. Standard determined that Claimant was disabled and entitled to disability benefits under the Policy, and has paid Claimant benefits since March 2004.

After Standard began paying Claimant's disability benefits under the Policy, Claimant filed a claim for permanent partial disability under the Missouri Workers' Compensation Act, Section 287.010 et seq.,

RSMo 2000 [1]. Claimant filed the workers' compensation claim as a result of an injury he sustained in the course of his employment in December 2003. Claimant subsequently settled his workers' compensation claim. Under the terms of the settlement, Claimant's employer agreed to pay him a lump sum of $24,165.93, which reflected a 35 percent partial disability of Claimant's left shoulder. The Second Injury Fund agreed to pay Claimant a lump sum of $60,000. These amounts were subject to reduction by attorney fees and out-of-pocket expenses in an aggregate amount of $24,136.92. The parties agreed that the net payment to Claimant for the settlement of his workers' compensation claim was equivalent to $144.30 per month to Claimant for the remainder of his life. Claimant agreed to accept these sums in full settlement of all claims stemming from the injury arising out of Claimant's employment. Claimant, his employer, and the Second Injury Fund entered into a Stipulation for Compromise Settlement stating the terms of the settlement agreement. The parties expressly stipulated that no portion of the settlement amount was attributable to rehabilitation expenses, death benefits, burial expenses, or medical expenses.

After Claimant settled his workers' compensation claim, Standard determined that pursuant to the terms of that settlement, Claimant received the equivalent of $144.30 per month under a workers' compensation law for lost wages. Standard further concluded that Claimant's settlement of his workers' compensation claim was "deductible income" as defined in the Policy. Thus, Standard deducted $144.30 from its monthly payment of disability benefits to Claimant. Claimant then filed his motion for declaratory judgment seeking to prohibit the offset.

By agreement, the parties stipulated to the facts of the case and filed cross motions for summary judgment. The Joint Stipulation of Facts provides that the Policy defines the benefit payable to Claimant as "60% of [your] pre-disability earnings reduced by deductible income." The Policy defines "deductible income," to include:

Any amount you receive or are eligible to receive for lost wages because of your disability arising out of or in the course of employment with the Employer, including amounts for partial or total disability, whether permanent, temporary, or vocational, under any of the following:

a. A workers' compensation law;

The Policy then provides as an "Exception to Deductible Income" any amount paid under a Workers' Compensation Act or similar law for benefits other than lost wages.

The trial court granted Claimant's motion for summary judgment and denied Standard's motion for summary judgment finding that Standard was precluded from offsetting Claimant's long-term disability benefits by the amount attributable to the Stipulation for Compromise Settlement, specifically $144.30 per month, past, present, or future. As grounds for its ruling, the trial court found that: (1) the lump sum payment to Claimant was consideration for Claimant's compromise of litigation, specifically claims for permanent disability and future medical treatment; (2) lost wages in the context of the workers' compensation law only applies to compensation paid to the employee for temporary total disability benefits as provided by Section 287.160 and 287.170, and as total disability as defined by Section 287.020.7, and specifically, compensation for lost wages while the employee is unable to work while

---

1. Unless otherwise noted, all further statutory references are to RSMo 2000.

going through the healing process; (3) the compensation received by Claimant from the employer for the permanent disability to Claimant's left shoulder as a result of his work-related accident on December 9, 2003, was not the same as "lost wages;" (4) the compensation received by Claimant from the Second Injury Fund for the permanent disability attributed to Claimant's pre-existing medical conditions was not the same as "lost wages;" and (5) Standard's group long-term disability insurance policy is ambiguous and must be construed in favor of coverage for Claimant.

This appeal follows.

## Point on Appeal

In its sole point on appeal, Standard claims that the trial court erred in denying its motion for summary judgment and granting summary judgment for Claimant because under the terms of Standard's group long-term disability insurance policy, Standard was entitled to offset any amount Claimant received in settlement of his workers' compensation claim for lost wages against the benefits otherwise payable to him under the terms of that policy. Standard asserts that Claimant's settlement of his claim for permanent partial disability under Missouri's workers' compensation laws was a recovery of "lost wages" within the meaning of the policy, thereby allowing Standard to offset the workers' compensation settlement from the benefits recoverable by Claimant under the Policy.

## Standard of Review

The standard of review for an appeal from summary judgment is essentially *de novo. Am. Family Mut. Ins. Co. v. St. Clair*, 295 S.W.3d 586, 591 (Mo.App. E.D. 2009), *citing ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Sum-

mary judgment will be upheld on appeal if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Id.* Summary judgment is particularly appropriate when construction of a contract is at issue and the contract is unambiguous on its face. *Lupo v. Shelter Mut. Ins. Co.*, 70 S.W.3d 16, 18–19 (Mo.App. E.D.2002).

## Discussion

The appeal before us presents no disputed issue of material fact. The salient issue presented is whether Claimant's workers' compensation settlement was a recovery of lost wages as provided under the Policy or whether the settlement was for something other than lost wages, thereby removing the settlement from the set off provisions of the Policy. The Policy does not define the term "lost wages." Claimant argues the absence of a statutory definition renders the terms of the Policy ambiguous, and therefore not subject to resolution by summary judgment. Standard posits that the Policy is unambiguous despite the lack of guidance from an internal definition because settled Missouri case law recognizes Claimant's workers' compensation settlement as a recovery of lost wages. Specifically, Standard notes that, under Missouri law, workers' compensation payments are divided into two categories, wage-loss payments based on the concept of disability, and payments of hospital and medical expenses occasioned by any work-connected injury, regardless of wage loss or disability. *Sheldon v. Bd. of Trs. of the Police Ret. Sys.*, 779 S.W.2d 553, 556 (Mo. banc 1989). Standard then argues that because the parties expressly stipulated that the workers' compensation settlement specifically excluded any amount attributable to rehabilitation expenses, death benefits, burial expenses, or medical expenses, the

settlement represented a recovery for Claimant's lost wages. We agree.

### I.  The Policy is Not Ambiguous

■ As we construe the Policy granting the disability benefit payable to Claimant from Standard, we are mindful that insurance policies are contracts; thus, the rules of contract construction apply. *Lupo*, 70 S.W.3d at 19. The words of a policy are given their ordinary meaning unless it is obvious that a technical meaning was intended. *Krombach v. Mayflower Ins. Co. Ltd.*, 785 S.W.2d 728, 731 (Mo.App. E.D. 1990). Courts cannot create an ambiguity to enforce a particular construction. *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. banc 1991). Moreover, where no ambiguity exists in the contract, the court enforces the policy as written. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993).

The issue of whether a contract is ambiguous is a question of law. *Id.* The Missouri test for ambiguity is clear. The policy must be read as a whole to determine the parties' intent. *Oak River Ins. Co. v. Truitt*, 390 F.3d 554, 557 (8th Cir.2004), *citing Kyte v. Am. Family Mut. Ins. Co.*, 92 S.W.3d 295, 298–99 (Mo.App. W.D. 2002). A contract is ambiguous only if reasonable people may fairly and honestly differ in their construction of the terms because the terms are susceptible to more than one meaning. *Lupo*, 70 S.W.3d at 19. A contract is not ambiguous merely because the parties disagree over its meaning. *Id.* Evidence of how the contract was understood or acted upon by the parties is only used when the contract or a contract term is unclear. *Nickles v. Auntie Margaret Daycare Corp.*, 829 S.W.2d 614, 616 (Mo.App. E.D.1992).

Ambiguous language is construed against the insurer. *Peters*, 853 S.W.2d at 302. Likewise, so is limiting language.

*Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 150 (Mo.App. E.D. 1993). If an ambiguity exists, the policy language will be interpreted as understood by the lay person who purchased it. *Oak River Ins. Co.*, 390 F.3d at 558. Courts should not adopt an interpretation neutralizing a policy provision if another interpretation gives it effect. *Id.*

Standard argues that the Policy is not ambiguous because the Policy clearly provides for a setoff for workers' compensation benefits, unless the benefits paid are not for lost wages.

Because the term "lost wages" is not defined by the Policy, Claimant asserts the term must be given its ordinary meaning. The ordinary meaning of "lost wages," Claimant contends, is not the "technical, philosophical or scientific meanings of terms, nor a restrictive meaning acquired in legal usage." *Burns v. Smith*, 303 S.W.3d 505, 511 (Mo. banc 2010). Claimant suggests the "ordinary meaning" of the term by referring to the *Merriam Webster* online dictionary, which defines "lost" as "taken away or beyond reach or attainment" and "wage" as "a payment usually of money for labor or services usually according to contract and on an hourly, daily, or piecework basis—often used in plural." Merriam Webster, available at http://www.merriam-webster.com. Taken together, we find that the ordinary meaning of the term "lost wages" applies to payments Claimant would have received, but which have been taken away or are no longer attainable due to his injury. Even without a definition of "lost wages" contained with the policy, when we apply the ordinary meaning of the term, the Policy states that Claimant's disability benefit may be reduced by any amount Claimant receives under the worker's compensation law to compensate *Claimant for payments that have been taken away or are no longer attainable*

*due to his injury.* We hold that applying the "ordinary meaning" of the term "lost wages" as found in *Merriam Webster* is wholly consistent with the term "lost wages" as used in the policy. Accordingly, we hold the Policy to be unambiguous despite the absence of a definition for the term "lost wages."

## II. *The Stipulation for Compromise Settlement was for lost wages.*

■ Having determined "lost wages" as used in the Policy is consistent with the simple and objective standard for an ordinary person of average understanding, we next consider whether the Stipulation for Compromise Settlement provided for payment of Claimant's lost wages, or constituted a payment to Claimant for something other than lost wages. Standard argues that the terms of the Stipulation for Compromise Settlement for his workers' compensation claim, when reviewed under Missouri law regarding workers' compensation benefits, mandate a finding that the settlement constituted payment for "lost wages" and thus, Standard's offset was proper.

In the Stipulation for Compromise Settlement, Employer and Claimant agreed:

6. That there are dispute(s) between the Employee and the Employer/Insurer as to the extent and nature of permanent partial disability and future medical care.

7. That there are dispute(s) between the Employee and the Second Injury Fund as to the nature and extent of permanent partial disability, permanent total disability and the liability of the Second Injury Fund. That the alleged pre-existing disability and percentage are as to BAW (diabetes, anxiety/depression, cardiac), and right shoulder.

8. That because of the dispute(s) it is agreed by the parties to enter into a compromise lump sum settlement under Section 287.390 RSMo.

We note that as part of the joint summary judgment submission made to the trial court, Claimant acknowledged and expressly agreed that no portion of the settlement amount was a payment for rehabilitation expenses, death benefits, burial expenses, or medical expenses. Given this agreement by the parties, we know what the settlement payment did not represent. Acknowledging these parameters, the question before us is whether the settlement amount represents payment for anything other than lost wages. If not, the trial court erred in granting summary judgment in favor of Claimant. In resolving this appeal, we are guided by the workers' compensation statutes and the clear interpretation of those statutes by Missouri courts.

We begin our worker's compensation analysis with Section 287.190, which provides payment for permanent partial disability under the statutory scheme. Section 287.190 provides a computation by which the payment from an employer to an employee for a work-related injury causing a permanent partial disability is to be determined. The statute specifies that the compensation to be paid is determined by a schedule of losses for specific injuries. The schedule multiplies the employee's "weekly earnings" or "weekly wage" by a pre-determined number of weeks depending on the severity of the injury. Section 287.190. Although the statute does not explicitly state that the compensation paid pursuant to its terms is to compensate the employee for "lost wages," the plain language of the statute leaves no doubt that the compensation paid under the statute is properly considered payment for the injured employee's lost wages.

Claimant argues and the trial court found that the lump sum payment made to

Claimant was not for lost wages, but represented consideration for the parties' compromise of litigation, specifically Claimant's claims for permanent disability and future medical treatment. The trial court further found that "lost wages" is not equivalent to "compensation" paid for a permanent disability under the workers' compensation law. We disagree.

The dominant theme of Claimant's argument to the trial court and on appeal is that an actual loss of earnings is not an essential element to a claim of permanent partial disability, and therefore, a recovery for a permanent partial disability does not equate to a recovery for lost wages. Citing *Seeley v. Anchor Fence*, 96 S.W.3d 809, 819 (Mo.App. S.D.2002), and *Wiele v. Nat'l Super Markets, Inc.*, 948 S.W.2d 142, 148 (Mo.App. E.D.1997) (overruled on other grounds), Claimant asserts that an employee is compensated for a permanent partial disability based on a schedule of losses that does not require an actual loss of earnings, and that the Second Injury Fund liability stems from the "synergistic effect of the disability caused by the primary injury combined with disabilities from the pre-existing medical conditions," which encompasses more than lost earnings.

Although the *Seeley* court stated that an actual loss of earnings is not an essential element of a claim for permanent partial disability, the court expressly stated that permanent partial disability benefits were meant "to compensate an injured party for lost earnings." *Seeley*, 96 S.W.3d at 819. Thus, a claimant may indeed return to work, as the *Seeley* court acknowledged, but the claimant's injury impairs his "efficiency in the ordinary pursuits of life," and therefore the award compensates him for earnings he would have attained, had he been without injury. *See id.* Claimant suggests that Standard mistakenly equates the term "lost wages" with the term "loss of earning capacity" as used by the courts. We are not persuaded and find no distinction between these terms. In this context, the difference is a matter of semantics, nothing more.

Claimant contends that an actual loss of earnings is not an essential element of a claim for permanent partial disability under *Wiele*, 948 S.W.2d at 148. While Claimant correctly quotes *Wiele*, he misconstrues the holding in *Wiele* by failing to address the quote in context. *Wiele* addressed, among other issues, the percentage applied to the claimant's permanent partial disability. The *Wiele* court considered the level of the employee's lost earnings and ability to continue working in determining the appropriateness of the Commissioner's award. *Id.* Thus, the award reflected lost wages because the award was not as large as it would have been, had the claimant been unable to return to work. Analogizing *Wiele* to the analysis employed in *Seeley*, the award for partial permanent disability compensated the *Wiele* claimant for the injury that impaired his "efficiency in the ordinary pursuits of life," including "lost earnings."

Claimant also avers that his recovery for permanent total disability encompasses more that lost earnings. Section 287.200 addresses the amount to be paid on a workers' compensation claim for a permanent total disability. Like the recovery for a permanent partial disability, the statutory scheme for compensating a permanent total disability is also based upon the weekly compensation paid to the injured worker. Notably, Section 287.200.3 allows for the suspension of the permanent total disability award whenever an injured worker is restored to his regular work by the use of glasses, prosthetics, appliances or physical rehabilitation. The fact that a permanent total disability award may be

suspended upon an employee's return to work underscores the statutory scheme of equating the disability award to a worker's lost earnings, and nothing more.

■ We find the Missouri Supreme Court opinion in *Sheldon v. Board of Trustees of Police Retirement System,* 779 S.W.2d at 555–56, provides appropriate guidance in this matter. As noted in *Sheldon,* workers' compensation benefits for physical injury, such as the benefits Claimant received here, are divided into only two categories: wage-loss payments based on the concept of disability, and payment of hospital and medical expenses from a work-connected injury regardless of wage loss or disability. *Id.* Claimant has not provided any judicial authority to support its contention that a workers' compensation award can be characterized as anything other than wage loss payments or payments for hospital and medical expenses, nor have we found any such authority.

We note that this Court previously has found that permanent partial disability benefits are meant to compensate an injured employee for his lost wages. *Hankins Const. Co. v. Missouri Ins. Guar. Ass'n,* 724 S.W.2d 583, 587 (Mo.App. E.D. 1986) (overruled on other grounds). In *Hankins,* where the Missouri Insurance Guaranty Association argued that the loss of earning capacity is conclusively presumed and the amount of an award for permanent partial disability is determined by reference to a schedule of losses, this Court noted:

> the reason for [Section] 287.190's presumption is that a permanent injury will in most cases affect earning capacity. The reason for the award of permanent partial disability benefits is to compensate an injured party for lost earnings. The use of the schedule is only for administrative convenience. It simply re-

moves the need to try the issue of what the effect on earning capacity is for each Workers' Compensation claimant, an administrative nightmare in a statutory claims procedure which was intended to be streamlined.

*Id.*

■ This "presumption" that a permanent partial disability will result in a loss of wages in an amount computed according to the statutory schedule eliminates the need to prove actual losses. *See, e.g., Komosa v. Monsanto Chem. Co.,* 317 S.W.2d 396, 400 (Mo. banc 1958). We decline to follow Claimant's argument that this presumption undermines the principle stated in *Sheldon* that workers' compensation awards represent either wage-loss payments based on the concept of disability or the payment of hospital and medical expenses from a work-connected injury.

Because the parties here have expressly agreed that the amount paid to Claimant pursuant to the Stipulation for Compromise Settlement was not for medical expenses, we find under *Sheldon,* the workers' compensation compromise payment must have been wage-loss payments, or "lost wages."

We hold that the Stipulation for Compromise Settlement entered into for a lump sum workers' compensation award to Claimant from Standard, and not for medical expenses, was an award for "lost wages." Because "lost wages" constitutes deductible income under the Policy provided by Standard, and because the Stipulation for Compromise Settlement was a lump sum payment of lost wages, Standard properly offset the amount Claimant received in the Stipulation for Compromise Settlement from Claimant's long-term disability benefits. We find that the trial court improperly granted Claimant's sum-

mary judgment motion in Claimant's declaratory judgment action.

*Conclusion*

The judgment of the trial court is reversed.

ROY L. RICHTER, C.J., and GARY M. GAERTNER, JR., J., Concur.